# EXHIBIT A



International Association of Sheet Metal, Air, Rail and Transportation Workers

**Local #18 – Wisconsin AFL-CIO**
2201 Springdale Road • Waukesha, WI 53186
Telephone: (262) 798-1818 • Toll Free (In United States): 800-242-5822 • Fax (262) 798-1837

## LETTER OF ASSENT

This agreement is entered into between _Holming Fab + Fabrication LLC_
(hereinafter referred to as the *"Employer"*) and Sheet Metal Workers' Local #18 (hereinafter referred to
as the *"Union"*).

The Employer agrees to be bound by the current standard area agreements within the geographical
jurisdiction of Sheet Metal Workers' Local #18. The Employer further acknowledges that the Union has
demonstrated that it represents a majority of the Employer's employees in the bargaining unit covered
by the aforesaid labor agreements within the geographical jurisdiction of Sheet Metal Workers' Local
18. Therefore, the Employer recognizes the Union as the exclusive bargaining representative under
Section 9(a) of the National Labor Relations Act for all employees performing work within the bargaining
unit covered by these agreements within the geographical jurisdiction of the Union. The parties further
agree that they shall be bound by any successor agreement to the standard area agreements within the
jurisdiction of Local #18 unless written notice is given at least ninety (90) but no more than one hundred
twenty (120) days prior to the expiration of any such agreement that a party does not intend to be bound
by the successor agreement to that particular agreement.

EMPLOYER

BY _Wm. R. Sellers_

TITLE _CEO_

DATE _11/16/17_

_William R. Sellers_
_414-915-4877_

SHEET METAL WORKERS' LOCAL #18

BY _MB Mooney_

TITLE _FST/BA_

DATE _11-16-17_



SMART.

International Association of Sheet Metal, Air, Rail and Transportation Workers

## Local Union Number 18

### Affiliated With the AFL-CIO

**2018-2023**

# LABOR AGREEMENT

Between

LOCAL UNION No. 18 OF THE INTERNATIONAL ASSOCIATION OF SHEET METAL, AIR, RAIL AND TRANSPORTATION WORKERS

and

THE SHEET METAL AND AIR CONDITIONING CONTRACTORS' ASSOCIATION OF MILWAUKEE, INC.

SMACNA

SMACCA Milwaukee

Established 1936

# INDEX

Page

Allocation........................................................................................54
Alcohol & Drug Abuse............................................................ 51,52
Apprentices ........................................................................... 23-25
Apprenticeship & Training Fund.............................................. 14-17
Bonding ................................................................................. 37-39
Coffee Break ............................................................................. 39
Covered Employment................................................................. 1,2
Dues & Fee Check off............................................................. 40,41
Equal Opportunities-Community Outreach .................................. 53
Equipment Furnished Welders.................................................... 51
Fund Payments ...................................................................... 37-39
Grievance Procedure ............................................................. 18-22
Health & Welfare Plan ............................................................ 32,33
Holidays......................................................................... 5,6,31,32
Industrial Addendum .............................................................. 55-66
Industry Funds........................................................................ 11-14
International Training Institute…............................................... 13,14
Job Site Entry ........................................................................... 52
Journeyman Training .............................................................. 41,42
Lending Employees.................................................................... 52
Moonlighting ............................................................................. 51
National Health Insurance.......................................................... 53
Overtime.......................................................................... 4-6,31,32
PAL........................................................................................... 32
Parking .................................................................................... 40
Payday ..................................................................................... 9,10
Pension Plan ......................................................................... 33-35
Resale Items .............................................................................. 7
Residential Addendum ........................................................... 67-71
Safety Glasses .......................................................................... 51
Safety & Health ......................................................................... 49
Safety Shoes ............................................................................. 51
Sheet metal labor/trainees ..................................................... 25-27
Shift Work................................................................................... 6
Show-up Pay .......................................................................... 10,41
Stewards ............................................................................... 36,37
Subcontracting .......................................................................... 2

Substance Abuse Policy............................................................51,52
Termination of Employment ..................................................... 39,40
Tool List, Tool Insurance.......................................... 18,45-47,49,50
Travel - Outside Basic Zone............................................. 8,9,35,36
     Within Basic Zone .................................................... 35
Union Label ........................................................................... 52
Union Membership ................................................................. 3,4
Wage Determination Forms ................................................... 52
Wage Rates-Journeymen ...................................................... 30,31
Warehouseman...................................................................... 42-44
Working Day, Week ................................................................ 4,5

## IMPORTANT NOTICE

The wage and fringe rates pursuant to this contract may differ due to Union Allocation. **THUS, ALWAYS REFER TO "DIRECT LABOR COST DATA"** for wage and fringe rates. While the wage and fringe rates are the amounts specified in the contract, the Union may allocate to certain funds:

         Base Wage
         National Pension Fund
         Wisconsin Health and Benefit

**REFER TO DIRECT LABOR COST DATA FOR ALLOCATIONS.**

THIS AGREEMENT, effective as of the 1st day of June 2018 by and between the **Sheet Metal And Air Conditioning Contractors' Association of Milwaukee, Inc.** And **Local Union No. 18 of the International Association of Sheet Metal, Air, Rail & Transportation Workers for Milwaukee, Ozaukee, Washington, Dodge, Waukesha and Jefferson Counties, State Of Wisconsin.**

## W I T N E S S E T H

That the parties hereto, for and in consideration of the mutual promises and obligations hereinafter imposed, and mutual benefits derived, agree to and with each other as follows:

## Definitions

1. The Sheet Metal and Air Conditioning Contractors' Association of Milwaukee, Inc. will be referred to in this Agreement as the "*Association*." Whenever the term "*Employer*" is used in this Agreement, it is intended to mean, and shall refer to Contractors represented in collective bargaining by such Association and/or such other individual contractors who are not members of the Association but are signatories to this Agreement.

2. Local Union No. 18 of the International Association of Sheet Metal, Air, Rail & Transportation Workers will be referred to in this Agreement as the "Union." The International Association of Sheet Metal, Air, Rail & Transportation Workers, AFL-CIO, will be referred to in this Agreement as the "*International Union*."

## ARTICLE I

**Section 1.** This agreement covers the rates of pay and conditions of employment of all employees of the employer engaged in but not limited to the (a) manufacture, fabrication, assembling, handling, erection, installation, dismantling, conditioning, adjustment, alteration, repairing and servicing of all ferrous or nonferrous metal work and all other materials used in lieu thereof and of all air-veyor systems, exhaust systems and air handling systems regardless of material used including the setting of all equipment and all reinforcements in connection therewith; (b) all lagging over insulation and all duct lining; (c) testing

1

and balancing of all air handling equipment and duct work; (d) the preparation of all shop and field sketches used in fabrication and erection including those taken from original architectural and engineering drawings or sketches, regardless of whether they are made by hand, by CAD, or other computer programs, (this does not apply to systems design drawings or sketches), (e) metal roofing and (f) all other work included in the jurisdictional claims of the International Association **of Sheet Metal, Air, Rail & Transportation Workers**.

**Section 2**. (a) It is recognized that employees, covered by this Labor Agreement and represented by the Union, have historically performed the work described in subsection (b) of this Section while employed by Employers covered by, and subject to, this Agreement; and the Employer hereby expressly assigns the performance of such work to the employees covered by this Agreement.

(b) The work, referred to in subsection (a) of this section shall include but not be limited to the following: the operation of welding machines, forklifts, scissors lifts, snorkel lifts, dewatering pumps, generators, air compressors, self-propelled elevating work platforms, and boom supported elevating work platforms.

ARTICLE II

**Section 1.** No Employer shall subcontract or assign any of the work described herein which is to be performed at a job site to any contractor, subcontractor or other person or party who fails to agree in writing to comply with the conditions of employment contained herein including, without limitations, those relating to union security, rates of pay and working conditions, hiring and other matters covered hereby for the duration of the project.

**Section 2.** Subject to other applicable provisions of this Agreement, the Employer agrees that when subcontracting for prefabrication of materials covered herein, such prefabrication shall be contracted to fabricators, who pay their employees engaged in such fabrication not less than the prevailing wage for comparable sheet metal fabrication, as established under provisions of this Agreement.

2

## ARTICLE III

**Section 1.** The Employer agrees that none but journeymen, apprentices, and sheet metal labor/trainees sheet metal workers shall be employed on any work described in Article I. And, further, for the purpose of proving jurisdiction, agrees to provide the Union with written evidence of assignment on the employer's letterhead for certain specified items of work to be performed at a jobsite prior to commencement of work at the site. List of such specific items, which may be revised from time to time, as agreed to by and between SMACNA and SMART, shall be provided to the Employer.

## ARTICLE IV

**Section 1.** The Union agrees to furnish upon request by the Employer, duly qualified journeymen, apprentice sheet metal workers, and sheet metal labor/trainee sheet metal workers in sufficient numbers as may be necessary to properly execute work contracted for by the Employer in the manner and under the conditions specified in this Agreement. The Employer agrees to give 48 hours notice to the Union to furnish the journeymen and apprentices stated above. The Union shall have five working days in which to supply sheet metal labor/trainees.

## ARTICLE V

**Section 1.** The Employer agrees to require membership in the Union, as a condition of continued employment of all employees performing any of the work specified in Article I of this Agreement, within eight (8) days following the beginning of such employment or the effective day of this Agreement, whichever is the later, provided the Employer has reasonable grounds for believing that membership is available to such employees on the same terms and conditions generally applicable to other members and that membership is not denied or terminated for reasons other than the failure of the employee to tender the periodic dues and initiation fee uniformly required as a condition of acquiring or retaining membership.

3

**Section 2.**  If during the term of this Agreement the Labor-Management Relations Act of 1947 shall be amended by Congress in such manner as to reduce the time within which an employee may be required to acquire union membership, such reduced time limit shall become immediately effective instead of and without regard to the time limit specified in Section 1 of this Article.

**Section 3.**  The provisions of this Article shall be deemed to be of no force and effect in any state, to the extent to which the making or enforcement of such provision is contrary to law. In any state where the making and enforcement of such provision is lawful only after compliance with certain conditions precedent, this Article shall be deemed to take effect as to involved employees immediately upon compliance with such conditions.

ARTICLE VI

**Section 1.**  (a)  The regular work day shall consist of eight (8) hours labor on the job between 6:00 a.m. and 6:00 p.m. and the regular work week shall consist of five (5) consecutive eight (8) hour days labor in the shop or on the job, beginning with Monday and ending with Friday of each week. All full time or part time labor performed during such hours shall be recognized as regular working hours and paid for at the regular hourly rate.

(b)  By mutual agreement of the Local Union and Employer, a four (4) day work week, consisting of four (4) ten (10) hour days between the hours of 6:00 a.m. and 6:00 p.m. may be scheduled Monday through Friday of each week. Such consent will not be unreasonably withheld. Unless prohibited by local, State, or Federal law, all full time and part time labor performed during the hours described in Section 1(b) shall be recognized as regular working hours and paid for at the regular hourly rate.

Hours worked in excess of eight (8) hours in a work day when a five (5) day week is scheduled or ten (10) hours in a work day when a four (4) day week is scheduled shall be paid at the rate of time and one-half (1½) the basic straight time hourly wage rate.

4

A make-up day may be scheduled on Friday (if a four (4) day week is scheduled) or Saturday (if a five (5) day week is scheduled), however, at least eight (8) hours of work must be scheduled on the make-up day. A make-up day may be scheduled only in the event a day's work has been lost due to reasons beyond the employer's control, such as fire, power failure, strikes, work stoppages, or inclement weather conditions. Employees will be paid at the basic straight time hourly wage rate for make-up days. It is recognized that make-up days can cause employees to work over forty (40) hours in a work week. Whether the regular work week be a scheduled four (4) day or five (5) day work week, when an employee's accumulated hours of work on regular work days of the scheduled work week and the hours of work on a make-up day exceed forty (40) hours of work, then the employee shall be paid at the rate of time and one-half (1½) the basic straight time hourly wage rate for all hours in excess of forty (40) hours.

(c) An Employer may not lay off, discharge or discriminate against any employee for refusal to work on a Saturday make-up day, a four 10-hour day week during a holiday week, or under the provisions in paragraph (d) below.

(d) Notwithstanding the daily overtime provisions above in Article VI Sections 1(a) and 1(b), work performed, Monday through Friday, outside the regular workday as defined in Article VI Sections 1(a) and 1(b) may by mutual agreement of the Union, the employee, and the employer be compensated at the straight-time hourly rate as long as the employee is offered at least forty (40) hours in that work week. Such agreement must be reached before the work week begins. If the employee is not offered at least forty (40) hours in that week, all hours worked outside of the regular workday(s) under Sections 1(a) and 1(b) will be paid at one and one half (1 1/2) times the straight-time rate. The daily overtime obligations shall not apply where strike conditions make it impossible to put an Employee to work, where stoppage of work is occasioned thereby, where an Employee leaves work of one's own accord or for hours worked in excess of forty (40) hours in a workweek.

**Section 2.** New Year's Day, Memorial Day, Independence Day, Labor Day, Thanksgiving Day, Christmas Day or these days observed as such by the U.S. Postal Service, and Sunday shall be recognized as holidays. All work performed on holidays shall be paid double time.

Double time will also be paid after working eight (8) hours on any

5

Saturday.

**Section 3.** It is agreed that all regular scheduled overtime work performed outside of the regular working hours during the regular work week and on holidays shall be performed only upon notification by the Employer to the Local Union in advance of such work. Preference on overtime and holiday work shall be given to sheet metal workers on the job on a rotation basis so as to equalize such work as nearly as possible, allowing for skills and practicality.

**Section 4.** (a) When and where shift work is needed, shifts may be established for not less than three (3) consecutive working days, not necessarily in the same work week. Wage rate for such shifts shall be 115% of the base wage rate, plus full fringe benefits for hours worked. Pursuant to Addendum 5, the fringe benefits described therein shall be paid for hours worked.

(b) No shift shall be worked as shift work from 8:00 a.m. Saturday to 12 midnight Sunday.

(c) Hours worked in excess of eight (8) hours shall be paid at one and one-half (1½) times the base wage rate plus full fringe benefits for hours worked.

(d) No Employer shall require an employee to work two (2) consecutive shifts.

ARTICLE VII

Travel expense and working hours will be as provided in Addendum 6 attached hereto.

ARTICLE VIII

**Section 1.** The minimum rate of wages for journeymen sheet metal workers covered by this Agreement when employed in a shop or on a job within the jurisdiction of the Union to perform any work specified in Article I of this Agreement shall be (see addendum), except as hereinafter specified in Section 2 of this Article.

**Section 2.** On all work specified in Article I of this Agreement, fabricated and/or assembled by journeymen, apprentices, SMLT's and/or classified sheet metal workers within the jurisdiction of this Union, or elsewhere, for erection and/or installation within the jurisdiction of any

other Local Union affiliated with the International Association of Sheet Metal, Air, Rail & Transportation Workers, whose established wage scale is higher than the wage scale specified in this Agreement, the higher wage scale of the jobsite Union shall be paid to the employees employed on such work in the home shop or sent to the job site. This section will be changed accordingly if and when the Constitution and Ritual of SMART is changed such that it no longer mandates equalization.

**Section 3.** The provisions of Section 2 of this Article, Section 2 of Article II and Section 1 of Article III shall not be applicable to the manufacture for sale to the trade or purchase of the following items:

1. Ventilators
2. Louvers
3. Automatic and fire dampers
4. Radiator and air conditioning unit enclosures
5. Fabricated pipe and fittings for residential installations and light commercial work as defined in the locality
6. Mixing (attenuation) boxes
7. Plastic skylights
8. Air diffusers, grilles, registers
9. Sound attenuators
10. Chutes
11. Double-wall panel plenums
12. Angle rings

**Section 4.** The provisions of Section 2 of this Article shall not be applicable to AIR POLLUTION CONTROL SYSTEMS fabricated for the purpose of removing air pollutants, excluding air conditioning, heating and ventilating systems. In addition, the provisions of Section 2 of this Article will not be applicable to the manufacture of spiral pipe and fittings for high pressure systems.

**Section 5.** Except as provided in Sections 2 and 6 of this Article, the Employer agrees that journeymen sheet metal workers hired outside of the territorial jurisdiction of this Agreement shall receive the wage scale and working conditions of the local Agreement covering the territory in which such work is performed or supervised.

**Section 6.** When the Employer has any work specified in Article I of this Agreement to be performed outside of the jurisdiction of Local #18 and within the area covered by another Agreement with another union

7

affiliated with the International Association of Sheet Metal, Air, Rail & Transportation Workers, and qualified sheet metal workers are available in such area, he may send no more than two (2) sheet metal workers per job into such area to perform any work which the Employer deems necessary, both of whom shall be from the employer's home jurisdiction. All additional sheet metal workers shall come from the area in which the work is to be performed. All Journeymen sheet metal workers covered by this Agreement who are sent outside of the area covered by this Agreement shall be paid at least the established minimum wage scale specified in Section 1 of this Article but in no case less than the established wage scale of the local Agreement covering the territory in which such work is performed or supervised, plus all necessary transportation, travel time, board and expenses while employed in that area, and the Employer shall be otherwise governed by the established working conditions of that local Agreement. If employees are sent into an area where there is no local Agreement of the International Association of Sheet Metal, Air, Rail & Transportation Workers covering the area then the minimum conditions of the home local union shall apply. This section will be changed accordingly if and when the Constitution and Ritual of SMART is changed such that it no longer mandates the two man rule.

(a) Both parties to this Agreement are to be notified in writing of the procedures to be followed to implement payment for all necessary transportation, travel time, board and expenses prior to starting the job. The procedures will be binding on all parties three (3) days after receipt by the union, unless the Employer is notified to the contrary. The bills for the expenses referred to shall be presented to the Employer for full reimbursement for the cost incurred.

(b) Compensation for travel time shall be computed by multiplying the number of travel hours times the straight time hourly rate. It is understood that the Employer has the option to pay either the time traveled in a public conveyance or in a personal or company vehicle.

**Section 7.** In applying the provisions of Sections 2, 5, and 6 of this Article VIII, the term "*wage scale*" shall include the value of all applicable hourly contractual benefits in addition to the hourly wage rate provided in said Sections.

8

**Section 8.** Welfare benefit contributions shall not be duplicated.

When Sheet Metal Workers are employed temporarily outside the jurisdiction of their home local union, the parties signatory to this agreement agree to arrange through the Wisconsin Sheet Metal Workers' Health and Benefit Trust Fund to transmit any 401(k) contributions required to be made to a 401(k) plan where the work is performed to a 401(k) plan established for the employee's home local union, and/or to the National Supplemental Savings Fund and any health and welfare contributions made on behalf of the employee to the Wisconsin Sheet Metal Workers Health and Benefit Trust Fund in the employee's home local union.

This obligation is conditioned upon a suitable reciprocity arrangement being agreed to by the trustees of such plans.

The parties to this Agreement agree to establish a system for continuing health and welfare coverage for employees working temporarily outside the jurisdiction of the local collective bargaining agreement when health and welfare contributions are transmitted on their behalf by trust funds from other areas.

**Section 9. Payday.** (a) Employees shall be paid weekly not later than 4:30 p.m. Wednesday. Such payment shall include all wages earned during the previous calendar week up to midnight Saturday. When a recognized holiday falls on Monday, Tuesday or Wednesday of any week, wages for the previous week may be paid not later than 4:30 p.m. Thursday. Employees shall be responsible for tendering time slips in such a manner that they are received at the Employer's office no later than Monday morning. Time slips turned in to a job foreman shall be considered received by the Employer, except that employees when discharged shall be paid in full by personal delivery on the day of discharge if the Employer does not maintain its main office in the geographic jurisdiction of this agreement unless the Employer has elected to make payments via electronic deposit, in which case the discharged Employee will be paid via electronic deposit on the next regular payday. Milwaukee area Employers may deposit the check of a discharged Employee in the mail to the last address furnished by the Employee on the day of discharge, or, upon the Employee's request, the Employee may pick up the check at the Employer's office the day of discharge.

9

(b) Wages shall be payable on the job or by mail. Wage payments mailed shall bear a postmark not later than Tuesday midnight. The Employer shall have the option of paying wages by direct deposit to the Employee's bank account no later than 4:30 p.m. Wednesday, provided the Employer agrees to also make fund payments to the Health and Benefit Fund and Union dues payments by electronic transfer.

(c) Employees who elect voluntary termination shall have all due wages electronically deposited or mailed on the next regular payday to the last address furnished the Employer.

**Section 10.** Journeymen sheet metal workers, apprentices, and sheet metal labor/trainees who report for work by direction of the Employer and are not placed at work, shall be entitled to two (2) hours pay at the established rate. The provisions of this section will not apply if the employee is sent home due to reasons beyond the Employer's control, such as, (a) fire, power failure, strikes, or work stoppages (b) the employee is physically unable to do his job or leaves the job of his own accord, or (c) weather conditions have created a hazardous condition on the job site.

Any employee who commences work outside of the basic 6 county zone shall never be paid less than four (4) hours pay at the regular straight time hourly rate. This provision shall not apply where the employee is provided with notice of no work prior to the completion of the previous day's shift.

**Section 11.** Each Employer covered by this Agreement shall employ at least one (1) journeyman sheet metal worker who is not a member of the firm on all work specified in Article I of this Agreement. However, it will be permissible for an owner-member to be the journeyman sheet metal worker.

**Section 12.** (a) Contributions provided for in Section 12(b) of this Article shall continue and be required only for so long as the Employer remains a participant in the Sheet Metal and Air Conditioning Contractors' National Industry Fund of the United States (IFUS) and will be used to promote programs of industry education, training, negotiation and administration of collective bargaining agreements, research and promotion, such programs serving to expand the market for the services of the sheet metal industry, improve the technical and business skills of employers, stabilize and improve Employer-Union relations, and

10

promote, support, and improve the employment opportunities for employees. No part of any such payments, however, shall be used for any other purposes except as expressly specified above.

(b) For so long as the Employer shall remain a participant in IFUS, the Employer shall pay to the Sheet Metal and Air Conditioning Contractors' National Industry Fund of the United States (IFUS) twelve cents ($ .12) per hour worked on and after the effective date of this agreement by all employees of the Employer covered by this Agreement, unless noted otherwise in wage tables in the addenda to this Agreement. Payment shall be made before the 20th day of the succeeding month and shall be remitted to the designated local depository for the Trustees of the Sheet Metal Contractors of Milwaukee (the local industry fund) for further transmittal to IFUS:

Sheet Metal Contractors of Milwaukee
11001 W. Plank Court
Suite 100
Wauwatosa, WI. 53226

(c) The IFUS shall submit to the International Association of Sheet Metal, Air, Rail & Transportation Workers not less often than semi-annually written reports describing accurately and in reasonable detail, the nature of activities in which it is engaged or which it supports directly or indirectly with any of its funds. One time per year, the IFUS shall include in such written report, a financial statement attested by a certified public accountant and containing its balance sheet and detailed statement of annual receipts and disbursements. Further specific detailed information in regard to IFUS activities or its receipts and/or expenditures shall be furnished to the International Association of Sheet Metal, Air, Rail & Transportation Workers upon written request.

(d) Grievances concerning use of IFUS funds for purposes prohibited under Section 12 (a) or for violations of other subsections of this Section may be processed by the International Association of Sheet Metal, Air, Rail & Transportation Workers directly to the National Joint Adjustment Board under the provisions of Article X of this Agreement. In the event such proceeding results in a deadlock, either party may, upon ten (10) days notice to the other party, submit the issue to final and binding arbitration. The arbitrator shall be selected by the Co-Chairmen of the National Joint Adjustment Board. The arbitrator shall be authorized to impose any remedial order he deems appropriate for violation of this

11

section, including termination of the employer's obligation to contribute to the IFUS. The authority of the arbitrator is expressly limited to determination of a deadlocked issue under this Section, (Section 12, Article VIII), and no other.

(e)  Nothing in this Agreement shall in any way affect the right of the Employer to withdraw from participation in IFUS. Should the Employer, in its sole discretion, cease to be a participant in IFUS, then the contribution called for in this Section 12 (b) shall instead be made to the Trustees of the Sheet Metal Contractors of Milwaukee (local industry fund), described in Section 13 of this article.

**Section 13.**  (a) Contributions provided for in Section 13(b) of this Article will be used to promote programs of industry education, training, negotiation and administration of collective bargaining agreements, research and promotion, such programs serving to expand the market for the services of the Sheet Metal Industry, improve the technical and business skills of employers, stabilize and improve Employer-Union relations, and promote, support, and improve the employment opportunities for employees.  No part of any such payments, however, shall be used for any other purposes except as expressly specified above.

(b) The Employer shall pay to the designated local depository for transmittal to the Trustees of the Sheet Metal Contractors of Milwaukee (the local industry fund), nineteen cents ($0.19) per hour for each hour worked on and after the effective date of this Agreement for journeymen and apprentices and for other sheet metal workers as set forth in the wage tables in addenda to this Agreement.  Payment shall be made monthly before the 20th day of the succeeding month.

(c)  The Fund shall furnish to the Business Manager of the Union, not less often than semi-annually, written reports describing in reasonable detail the nature of activities in which it is engaged or which it supports directly or indirectly with any of its funds.  One time per year, the Fund shall include in such written report, a statement attested by a certified public accountant and containing its balance sheet and detailed statement of receipts and disbursements.  Further specific detailed information in regard to Fund activities or its receipts and/or disbursements shall be furnished to the Business Manager of the Union upon his written request.

12

(d)  Grievances concerning use of local industry fund monies to which an employer shall contribute for purposes prohibited under Section 13(a) or for violations of other subsections of this Section shall be handled under the provision of Article X of this Agreement.  The National Joint Adjustment Board shall be authorized to impose any remedial order for violation of this Section, including termination of the employer's obligation to contribute to the local industry fund.

**Section 14.**  The employers will contribute to the International Training Institute for the Sheet Metal and Air Conditioning Industry twelve cents ($0.12) per hour for each hour worked by each employee of the employer covered by this Agreement.  Payment shall be made on or before the 20th day of the succeeding month and shall be remitted as designated by the Trustees of the Fund, or for the purposes of collection and transmittal through:

National Benefit Funds
P. O. Box 79321
Baltimore, MD 21279-0321

When mailed, the payments shall be postmarked no later than the 15th day of the month to ensure the timely arrival at the designated depository.

**Section 15.**  The parties agree to be bound by the separate Agreements and Declarations of Trust establishing the International Training Institute for the Sheet Metal and Air Conditioning Industry, the Sheet Metal Workers' National Pension Fund, the Wisconsin Sheet Metal

Workers' Health and Benefit Trust Fund, the Milwaukee Sheet Metal Journeymen and Apprenticeship Training Trust Fund, the Sheet Metal Contractors of Milwaukee (the local industry fund), and the separate agreements of all other local or national programs to which it has been agreed that contributions will be made.  In addition, the parties agree to be bound by any amendments to said trust agreements as may be made from time to time and hereby designate as their representatives on the Board of Trustees such trustees as are named together with any successors who may be appointed pursuant to said agreements.

**Section 16.**  The Employers will contribute to the Milwaukee Sheet

13

Metal Journeymen and Apprenticeship Training Trust Fund ("JATTF") thirty-eight cents ($0.38) per hour for each hour worked by all journeymen and apprentices; thirty-three cents ($0.33) per hour for each hour worked by all warehousemen; and twenty-seven cents ($0.27) per hour for each hour worked by all industrial addendum employees of the Employer covered by this Agreement. Payment shall be made to the designated depository of the Trustees of the Milwaukee Sheet Metal Journeymen and Apprenticeship Training Trust Fund before the 20th day of the succeeding month. When mailed, the payments shall be postmarked no later than the 15th day of the month to ensure the timely arrival at the designated depository. (See subparagraph (c) regarding administrative contributions.)

(a)  The purposes of the Milwaukee Area Sheet Metal Journeymen and Apprenticeship Training Trust Fund are:

(1) To provide funds for journeyman and apprenticeship training.

(2) To establish and provide for sheet metal labor/trainee training.

(3) To reimburse employers for wages paid to apprentices for attending school.

(4) To employ a training coordinator and instructors to implement the training program.

(b) The Trust Fund shall be administered jointly and equally by the

Employers represented by the Association and by the Union under a joint trusteeship. The administration of the Trust shall be as set forth in a special agreement between the Association and the Union as established in the Trust Agreement prepared in pursuance thereof.

(c) Administrative Contributions

(1) In addition to the contributions to the Milwaukee Sheet Metal Journeymen and Apprenticeship Training Trust Fund, the Employer will make contributions, (herein after referred to as

14

"*Administrative Contributions*,") in connection with the Apprentice Paid Related Instruction Compensation Reimbursement Program ("*Day School Reimbursement Program*"); the Construction Labor Management Council of Southeastern Wisconsin ("*CLMC*"); the Building Industry Group Skilled Trades Employment Program ("*BIG/STEP*").

(2) Payments received pursuant to this Article, shall be segregated in accounts separate from the funds held by the JATTF and held merely as a conduit for the programs set forth in the preceding sentence. These programs shall each be responsible for their own costs, if any, associated with the collection and administration of the contributions relating to such programs. The Wisconsin Sheet Metal Workers' Health and Benefit Fund generally serves as the lead entity in collecting employer contributions and is reimbursed for costs incurred in collecting contributions and pursuing delinquencies on behalf of others. This shall include two cents ($0.02) per hour for every hour worked by employees of the employer covered under this agreement for the Milwaukee Sheet Metal Workers' Substance Abuse Testing and Assistance Program (SATAP). The Sheet Metal and Air Conditioning Contractors' Association of Wisconsin (SMACCA Wisconsin) shall serve as an administrator for the Milwaukee Sheet Metal Workers' Substance Abuse Testing and Assistance Program (SATAP). As such, SMACCA Wisconsin shall receive the SATAP contributions and make disbursements for SATAP expenses and otherwise deal with the program provider (presently Construction Data Services (CDS)). SMACCA Wisconsin shall be directed to provide the Union and the Association with copies of CDS invoices and keep the Union and Association informed regarding any issues concerning receipts and disbursements of SATAP funds. SMACCA Wisconsin shall be entitled to receive a reasonable fee for such administrative services. The amount of the fee will be subject to mutual agreement among the Union, the Association, and SMACCA Wisconsin and may be adjusted from time to time by mutual agreement. SMACCA Wisconsin shall be directed to maintain a separate accounting for all receipts and disbursements of SATAP funds and shall provide the Union and the Association with a detailed accounting of such receipts and disbursements

15

not less than semiannually. It is agreed that the cost of all administration, specimen collection and testing, medical review officer (MRO), and third-party administration under the SATAP program are proper expenditures for the common interest of the sheet metal industry and the funds described to be applied to the SATAP program are acknowledged to be an appropriate expenditure of SMACCA Wisconsin for the benefit of the sheet metal construction industry as a whole. SMACCA Wisconsin will pursue a statewide substance abuse testing program.

(3) The amount of contribution for the Day School Reimbursement Program shall be ten cents ($0.10) per hour worked for each hour worked by journeyman and apprentice Sheet Metal Workers and shall be used exclusively for the reimbursement of Employers for any taxable adjustment to income equivalent to base wages paid on behalf of apprentices when attending paid related instruction. Such reimbursements shall be limited to the extent of total funds accumulated for that purpose and contained in such account. Calculations will be made and payments disbursed for all funds in the account annually on a pro rata basis to Employers based on the number of Apprentices they employ. Contractors will be reimbursed for actual expenses of the apprentice's taxable adjustment to income equivalent to base wage. Disbursements will be made on or about June 1 each year.

(4) The amount of the contribution for CLMC shall be four cents ($0.04) per hour, two cents ($0.02) attributable to the Employees and two cents ($0.02) attributable to the Employers, for every hour worked by employees of the Employer covered by this Agreement. (Industrial Addendum workers' CLMC contribution shall be zero.)

(5) The amount of the contribution for BIG/STEP shall be four cents ($0.04) per hour, two cents ($0.02) attributable to the Employees and two cents ($0.02) attributable to the Employers, for every hour worked by employees of the Employer covered by this Agreement. (Industrial Addendum workers' BIG/STEP contribution shall be zero.)

16

(6) The arrangement to transfer the contributions to CLMC and BIG/STEP shall be reviewed from time to time by the Union and the Association and in the event the Union and the Association agree to discontinue the transfer to one or both, the hourly contribution relating to discontinuance shall cease and 50% of the discontinued contribution, the amount attributable to the Employees, shall go on the base wage and the other 50%, the amount attributable to the Employers, will no longer be an obligation of the contractor.

**Section 17.** Effective as of the date of this agreement the Employer will contribute to the National Energy Management Institute Committee (NEMIC), a jointly administered trust fund, three cents ($0.03) per hour for each hour worked by each employee of the employer covered by this Agreement. Payment shall be made on or before the 20th day of the succeeding month and shall be remitted as designated by the Trustees of the Fund.

**Section 18**. PAL and/or PAC Check-off the employer will withhold those hourly amounts that are published in the contract or on the most current wage data sheets. Those monies will be remitted along with all other remittances at the depository currently listed where all other home local benefits are remitted. Employers must remit these funds, identified as "PAL Check-off" and/or "PAC Check-off", which are to be received before the 20th day of the succeeding month.

ARTICLE IX

**Section 1.** Journeymen and apprentice sheet metal workers covered by this Agreement shall provide for themselves all necessary hand tools as listed in Addendum 16. They shall report to the shop or job with these tools in their possession. Failure to report with required tools means that the Employer is under no obligation to pay for show-up time.

**Section 2.** Journeymen, apprentices, and sheet metal labor/trainees covered by this Agreement shall not be permitted or required as a condition of employment to furnish the use of automobile or other conveyance to transport men, tools, equipment or materials from shop to job, from job to job, or from job to shop; facilities for such

17

transportation to be provided by the Employer. This provision shall not restrict the use of an automobile or other conveyance to transport its owner and personal tools from home to shop or job at starting time or from shop or job to home at quitting time.

## ARTICLE X

The Union and the Employer, whether party to this Agreement independently or as a member of a multi-employer bargaining unit, agree to utilize and be bound by this Article.

**Section 1.** Grievances of the Employer or the Union, arising out of interpretation or enforcement of this Agreement, shall be settled between the Employer directly involved and the duly authorized representative of the Union, if possible. Both parties may participate in conferences through representatives of their choice.

To be valid, grievances must be raised within thirty (30) calendar days following the occurrence giving rise to the grievance, or, if the occurrence was not ascertainable, within thirty (30) calendar days of first knowledge of the facts giving rise to the grievance.

**Section 2.** Grievances not settled as provided in Section 1 of this Article may be appealed by either party to the Local Joint Adjustment Board where the work was performed or in the jurisdiction of the employer's home local and such Board shall meet promptly on a date mutually agreeable to the members of the Board, but in no case more than fourteen (14) calendar days following the request for its services, unless the time is extended by mutual agreement of the parties or Local Joint Adjustment Board. The Board shall consist of representatives of the Union and of the local Employers' Association and both sides shall cast an equal number of votes at each meeting. The local Employers' Association, on its own initiative, may submit grievances for determination by the Board as provided in this Section. Except in the case of a deadlock, a decision of a Local Joint Adjustment Board shall be final and binding.

Notice of appeal to the Local Joint Adjustment Board shall be given within thirty (30) days after termination of the procedures prescribed in Section 1 of this Article, unless the time is extended by a mutual

18

agreement of the parties.

**Section 3.** Grievances not disposed of under the procedure prescribed in Section 2 of this Article, because of a deadlock or failure of such Board to act, may be appealed jointly or by either party to a Panel, consisting of one (1) representative appointed by the Labor Co-Chairman of the National Joint Adjustment Board and one (1) representative appointed by the Management Co-Chairman of the National Joint Adjustment Board. Appeals shall be mailed to the National Joint Adjustment Board.* Notice of appeal to the Panel shall be given within thirty (30) days after termination of the procedures prescribed in Section 2 of this Article. Such Panel shall meet promptly but in no event more than fourteen (14) calendar days following receipt of such appeal, unless such time is extended by mutual agreement of the panel members. Except in case of deadlock, the decision of the Panel shall be final and binding.

Notwithstanding the provisions of Paragraph 1 of this Section, an Employer who was not a party to the labor agreement of the area in which the work in dispute is performed may appeal the decision of the Local Joint Adjustment Board from that area, including a unanimous decision, and request a Panel hearing as set forth in Section 3 of this Article, providing such appeal is approved by the Co-Chairmen of the National Joint Adjustment Board.

**Section 4.** Grievances not settled as provided in Section 3 of this Article may be appealed jointly or by either party to the National Joint Adjustment Board. Submissions shall be made and decisions rendered under such procedures as may be prescribed by such Board. Appeals to the National Joint Adjustment Board shall be submitted within thirty (30) days after termination of the procedures described in Section 3 of this Article. (Copies of the procedures may be obtained from the National Joint Adjustment Board.*)

**Section 5.** A Local Joint Adjustment Board, Panel and the National Joint Adjustment Board are empowered to render such decisions and grant such relief to either party as they deem necessary and proper, including awards of damages or other compensation.

**Section 6.** In the event of non-compliance within thirty (30) calendar days following the mailing of a decision of a Local Joint Adjustment Board, Panel or the National Joint Adjustment Board, a local

19

party may enforce the award by any means including proceedings in a court of competent jurisdiction in accord with applicable state and federal law. If the party seeking to enforce the award prevails in litigation, such party shall be entitled to its costs and attorney's fees in addition to such other relief as is directed by the courts.

**Section 7.** Failure to exercise the right of appeal at any step thereof within the time limit provided therefore shall void any right of appeal applicable to the facts and remedies of the grievances involved. There shall be no cessation of work by strike or lockout during the pendency of the procedures provided for in this Article. Except in case of deadlock, the decision of the National Joint Adjustment Board shall be final and binding.

**Section 8.** In addition to the settlement of grievances arising out of interpretation or enforcement of this Agreement as set forth in the preceding sections of this Article, any controversy or dispute arising out of the failure of the parties to negotiate a renewal of this Agreement may be settled as hereinafter provided. This may be done **only** if both parties first expressly agree in writing to utilize, specifically as to a particular contract renewal or dispute, the (interest arbitration) settlement procedures set forth in this Section.

(a) Should the negotiations for renewal of this Agreement become deadlocked in the opinion of the Union representative(s) or of the Employer(s) representative, or both, notice to that effect shall be given to the National Joint Adjustment Board.

If the Co-Chairmen of the National Joint Adjustment Board believe the dispute might be adjusted without going to final hearing before the National Joint Adjustment Board, each will then designate a panel representative who shall proceed to the locale where the dispute exists as soon as convenient, attempt to conciliate the differences between the parties and bring about a mutually acceptable agreement. If such panel

representatives or either of them conclude that they cannot resolve the dispute, the parties thereto and the Co-Chairmen of the National Joint Adjustment Board shall be promptly so notified without recommendation from the panel representatives. Should the Co-Chairmen of the National Joint Adjustment Board fail or decline to appoint a panel member or

20

should notice of failure of the panel representatives to resolve the dispute be given, the parties shall promptly be notified so that either party may submit the dispute to the National Joint Adjustment Board.

In addition to the mediation procedure set forth above or as an alternate thereto, the Co-Chairmen of the Board may each designate a member to serve as a subcommittee and hear the dispute in the local area. Such committees shall function as arbitrators and are authorized to resolve all or part of the issues. They are not, however, authorized to deadlock and the matter shall be heard by the National Joint Adjustment Board in the event a subcommittee is unable to direct an entire resolution of the dispute.

The dispute shall be submitted to the National Joint Adjustment Board pursuant to the rules as established and modified from time to time by the National Joint Adjustment Board. The unanimous decision of said Board shall be final and binding upon the parties, reduced to writing, signed and mailed to the parties as soon as possible after the decision has been reached. There shall be no cessation of work by strike or lockout unless and until said Board fails to reach a unanimous decision and the parties have received written notification of its failure.

(b) Any application to the National Joint Adjustment Board shall be upon forms prepared for that purpose subject to any changes which may be decided by the Board from time to time. The representatives of the parties who appear at the hearing will be given the opportunity to present oral argument and to answer any questions raised by members of the Board. Any briefs filed by either party including copies of pertinent exhibits shall also be exchanged between the parties and filed with the National Joint Adjustment Board at least twenty-four (24) hours in advance of the hearing.

(c) The National Joint Adjustment Board shall have the right to establish time limits which must be met with respect to each and every step or procedure contained in this section. In addition, the Co-Chairmen of the National Joint Adjustment Board shall have the right to designate time limits which will be applicable to any particular case and any step therein which may be communicated to the parties by mail, telegram or telephone notification.

(d) Unless a different date is agreed upon mutually between the

21

parties or is directed by the unanimous decision of the National Joint Adjustment Board, all effective dates in the new agreement shall be retroactive to the date immediately following the expiration date of the expiring agreement.

> **\*All correspondence to the National Joint Adjustment Board shall be sent to the following address:**
>   **National Joint Adjustment Board**
>   **4201 Lafayette Center Drive**
>   **Chantilly, VA 20151**

22

ARTICLE XI

**Section 1.** All duly qualified apprentices shall be under the supervision and control of a Joint Apprenticeship and Training Committee composed of six (6) members, three (3) of whom shall be selected by the Employer, and three (3) by the Union. Said Joint Apprenticeship and Training Committee shall formulate and make operative such rules and regulations as they may deem necessary and which do not conflict with the specific terms of this Agreement, to govern eligibility, registration, education, transfer, wages, hours, working conditions of duly qualified apprentices and the operation of an adequate apprentice system to meet the needs and requirements of the trade. Said rules and regulations when formulated and adopted by the parties hereto shall be recognized as part of this Agreement.

**Section 2.** The Joint Apprenticeship and Training Committee designated herein shall serve for the life of this Agreement, except that vacancies in said Joint Apprenticeship and Training Committee caused by resignation or otherwise, may be filled by either party hereto, and it is hereby mutually agreed by both parties hereto, that they will individually and collectively cooperate to the extent that duly qualified apprentices be given every opportunity to secure proper technical and practical education experience in the trade, under the supervision of the Joint Apprenticeship and Training Committee.

**Section 3.** It is hereby agreed that the Employer shall apply to the Joint Apprenticeship and Training Committee and the Joint Apprenticeship and Training Committee shall grant apprentices according to the table in Article XII, Section 5. Provided, however, an Employer will not be entitled to a new apprentice if the employer has an apprentice on layoff for lack of work. This applies to the Employer to whom the apprentice was last assigned.

**Section 4.** Prior to the initial employment of an apprentice, he shall have completed a satisfactory medical examination. The Joint Journeymen and Apprenticeship Training Trust Fund shall pay for the examination and a copy of the medical report shall be forwarded to the apprentice's first Employer prior to employment. Each apprentice shall serve an apprenticeship of 5 years of not less than 9,000 work hours and such apprentices shall not be put in charge of work on any job and shall

23

work under the supervision of a journeyman until apprenticeship terms have been completed and they have qualified as journeymen, except that in the last 1,800 hours, apprentices may work alone.

**Section 5**(a). Effective June 1st, 2018 the following base wage rates and National Pension Fund contribution rates, as a percentage of the Journeyman's base wage and pension contribution rate, for each 1,800 hour period of apprenticeship, shall apply to all apprentices:

| | |
|---|---|
| 1st | 47% |
| 2nd | 54% |
| 3rd | 64% |
| 4th | 73% |
| 5th | 83% |

NOTE: For actual contribution rates refer to Direct Labor Cost Data sheets.

(b) Apprentices will receive the Wisconsin Sheet Metal Workers' Health and Benefit Plan benefits at the Sheet Metal Labor/Trainee level for the first 3,600 hours of their apprenticeship. After their first 3,600 hours the apprentice will begin receiving full benefits for the remainder of their apprenticeships.

**Section 6.** Apprentices may be assigned work which involves travel beyond the six-county jurisdictional area but within the limits of the Local No.18 jurisdiction. This Section will be changed accordingly if and when the Constitution and Ritual of SMART is changed regarding interstate travel of apprentices. In any condition, apprentices are to be back for day and night school and the cost for this travel and time required for this travel (full wages and benefits) will be borne entirely by the employer.

**Section 7.** (a) Apprentices will receive 120 hours of day school per semester on a one day per week schedule until four semesters or 520 hours for the sheet metal program and 560 hours for the EST program of school at maximum, have been completed. The remainder of school will be at night school at no cost to the employer.

(b) Apprentices shall receive the same health benefits as the Sheet Metal Journeyman, except that Apprentices first employed under a state

24

apprenticeship contract after June 26th, 2004 shall receive Wisconsin Sheet Metal Workers' Health and Benefit Fund benefits at the sheet metal labor/trainee level (currently associated with a $5.25 per hour contribution rate).

ARTICLE XII

**Section 1.**  Employers signatory to this Agreement shall have the right to employ sheet metal labor/trainees.  The Local Union shall administer the sheet metal labor/trainee program, provided however, it shall not be a condition of gaining admission to the apprenticeship list that an individual is or was a sheet metal labor/trainee and there shall be no natural or normal progression from sheet metal labor/trainee to apprentice. Sheet metal labor/trainees must become an approved applicant within (2) two years of date of hire.

**Section 2.**  The Employer shall apply to the Union for sheet metal labor/trainees who need not be on the apprenticeship list.  In the event no candidate from the apprenticeship list or from other sources can be supplied within five working days, the Employer may hire such employees and notify the Union immediately.

**Section 3.**  If a sheet metal labor/trainee, who has successfully qualified for apprenticeship is employed by a contractor and is returned to the Union, the Union shall place the sheet metal labor/trainee back on the approved apprentice list, in his proper position.

**Section 4.**  Sheet metal labor/trainees shall not perform any pattern layout and development, supervision, field measuring or perform work on a job site alone. Sheet metal labor/trainees shall not perform welding. They may continue to be assigned tacking and spot welding tasks. They shall always work under the supervision of a journeyman sheet metal worker. Sheet metal labor/trainees may be assigned work covered by this agreement that in the judgment of the employer they are capable of performing, but may not work unsupervised in the field.

**Section 5.**  Any apprentice of the employer on lay off for lack of work at the effective date of this Agreement must be rehired before said employer is entitled to any sheet metal labor/trainee. This provision applies to the employer to whom the apprentice was last assigned.

**The ratio of journeymen to the Apprentice may not exceed**

25

**1:1.** It is hereby agreed that the employer may apply to the Union and the Union shall grant sheet metal labor/trainees on the following basis:

| Journeymen | Apprentices | S/M Labor/Trainee |
|------------|-------------|-------------------|
| 1 | 0/1 | 1 |
| 2 | 0/1 | 1 |
| 3 | 3 | 1 |
| 4 | 4 | 4 |
| 5 | 5 | 4 |
| 6 | 6 | 6 |
| 7 | 7 | 6 |
| 8 | 8 | 6 |
| 9-11 | 9-11 | 7 |
| 12-14 | 12-14 | 8 |
| 15-17 | 15-17 | 9 |
| 18-20 | 18-20 | 10 |
| 21-23 | 21-23 | 11 |
| 24-26 | 24-26 | 12 |
| 27-29 | 27-29 | 13 |
| 30-32 | 30-32 | 14 |

Etc.

The Employer cannot have an additional sheet metal labor/trainee until the Employer has met the minimum journeyman-apprentice ratio. Any hiring or layoff must keep the total union employees of the Employer in correct ratio at all times.

**Section 6.** Sheet metal labor/trainees will not do any supervision or layout work.

**Section 7.** The Health and Benefit Fund coverage for sheet metal labor/trainees shall be at the rate determined by the Trustees.

**Section 8.** Sheet metal labor/trainees who are conditionally offered employment will take a pre-placement physical including drug testing at

26

the Employer's expense. The sheet metal labor/trainee will also enroll in the first available safety course at the Employer's expense.

**Section 9.** The wage scale for the sheet metal labor/trainee shall be a minimum of forty percent (40%) of the sheet metal journeyman. There shall be no National Pension Fund contribution for the sheet metal labor/trainee during the first 90 (ninety) calendar days of employment, a National Pension Fund contribution of $0.05 per hour for the 91st through the 364th calendar day, and a National Pension Fund contribution rate equal to the journeyman contribution rate multiplied by the ratio of his/her wage rate to the journeyman wage rate thereafter. The sheet metal labor/trainee will participate with contributions to the other funds to which journeymen contribute.

**Section 10.** In the event a sheet metal labor/trainee is employed by an employer and that sheet metal labor/trainee is called by the Joint Apprenticeship and Training Committee to be indentured as an apprentice, that Employer shall have first preference to indenture that sheet metal labor/trainee at that time so long as that Employer satisfies the ratio and other requirements necessary to entitle him to hire an apprentice.

**Section 11.** In the event an Employer abuses the utilization of a sheet metal labor/trainee by frequent layoffs and recalls, this matter shall be resolved under Article X.

ARTICLE XIII

**Section 1.** This Agreement with all its Addenda shall become effective June 1st, 2018 and shall remain in full force and effect until the 31st day of May 2023, and shall continue in force from year to year thereafter unless written notice of reopening is given not less than ninety (90) days prior to the expiration date. In the event such notice of reopening is served, this Agreement shall continue in force and effect until conferences relating thereto have been terminated by either party.

**Section 2.** Notwithstanding any other provision of this Article, or any other Article of this Agreement, whenever an amendment to the Standard Form of Union Agreement shall be adopted by the sponsoring national associations, any party to this Agreement, upon the service of

27

notice to all other parties hereto, shall have this Agreement reopened thirty (30) days thereafter, for the sole and only purpose of attempting to negotiate such amendment or amendments into this Agreement for the duration of the term hereof. There shall be no strike or lockout over this issue.

**Section 3.**  Any provisions of this Agreement which may be in violation of any applicable Federal or State Law shall not be effective and not be binding upon the parties hereto.  In the event that any of the provisions of this Agreement are held or constituted to be void, or to be in violation of any such laws, nevertheless the remainder of the Agreement shall remain in full force and effect, unless the parts or provisions so found to be void or in violation of any such laws are wholly inseparable from the remaining portion of this Agreement.

**Section 4.**  Each Employer hereby waives any right it may have to repudiate this Agreement during the term of the Agreement or during the term of any extension, modification, or amendment to this Agreement.

**Section 5.**  By execution of the Agreement, the Employer authorizes the Sheet Metal and Air Conditioning Contractors' Association of Milwaukee, Inc., to act as its collective bargaining representative for all matters relating to this agreement.  The parties agree that the Employer will hereafter be a member of the multi-employer bargaining unit represented by said Association unless this authorization is withdrawn by written notice to the Association and the Union at least 150 days prior to the then current expiration dates of the Agreement.

**Section 6.**  The ("Employer") recognizes Sheet Metal Workers Local No. 18 ("Union") as the exclusive bargaining representative under Section 9(a) of the National Labor Relations Act for all employees of the Employer who are covered by the Union's area labor agreements within the geographical jurisdiction of Sheet Metal Workers Local Number 18. Such recognition is predicated on the Union's demand for recognition under Section 9(a) of the National Labor Relations Act and the Union's representation that a majority of the employees covered by the Union's area labor agreements have authorized the Union to act as their exclusive bargaining representative under Section 9(a) of the National Labor Relations Act.

28

The Employer acknowledges that it has reviewed the Union's showing and agrees that it reflects that a majority of the bargaining unit employees have authorized the Union to represent them under Section 9(a) of the National Labor Relations Act.

In witness whereof, the parties hereto affix their signatures and seal this 1st day of June, 2018.

SHEET METAL AND AIR CONDITIONING CONTRACTORS' ASSOCIATION OF MILWAUKEE, INC.

By Lauri A. Rollings

Executive Vice President

LOCAL UNION NO. 18 OF
THE INTERNATIONAL ASSOCIATION
OF SHEET METAL, AIR, RAIL & TRANSPORTATION WORKERS

By Michael Mooney

Business Manager

29

**ADDENDA**

**Addendum 1.  Total Wage Package**

(a)  **Journeymen:**  The wages and fringe benefits for each hour worked by journeymen sheet metal workers covered by this agreement when employed in a position or on a job within the area covered by this agreement for the performance of any work specified in Section 1 of Article I of this agreement shall be as follows:

WAGES & FRINGES

| Effective Date | 6-1-18 | 6-1-19 | 6-1-20 | 6-1-21 | 6-1-22 |
|---|---|---|---|---|---|
| Journeyman | | | | | |
| Base Wage [+ 401 (k) Contr'n] | 43.52 | | | | |
| National Pension Fund | 14.58 | | | | |
| Wisconsin Health & Benefit Fund | 8.37 | | | | |
| 401 (k) Contribution** | ** | ** | ** | ** | ** |
| **Total Wage Package** | **66.47** | | | | |
| SMC Local Industry Fund | 0.19 | | | | |
| SMACNA IFUS | 0.12 | | | | |
| International Training Inst | 0.12 | | | | |
| Milwaukee JATTF | 0.38 | | | | |
| Day School Reimbursement (via JATTF) | 0.10 | | | | |
| SATAP (via JATTF) | 0.02 | | | | |
| CLMC/BIG STEP (via JATTF) | 0.08 | | | | |
| SMOHIT | 0.02 | | | | |
| NEMIC | 0.03 | | | | |
| **Total Industry Funds** | **1.06** | | | | |
| **Total Contractual Expense** | **67.53** | **69.98** | **72.48** | **75.08** | **77.78** |

**\*\*To be determined by the individual**

Note: For actual contribution rates refer to direct labor cost data sheets.

30

(b) **Foreman:** When a crew of four (4) or more sheet metal workers is employed on a job site, one (1) of the journeymen in the crew shall be designated a foreman. The wage rate for a foreman shall be 10% of the base rate per hour added to the journeyman rate specified in (a) above.

(c) **General Foreman:** When a crew of twelve (12) or more sheet metal workers is employed on a job site, one (1) of the journeymen in the crew shall be designated as a general foreman and one (1) journeyman as a foreman. The general foreman shall receive 15% of the base rate per hour added to the journeyman rate.

(d) **Industry Funds** to be paid hourly on all journeymen and apprentices.

| | |
|---|---|
| Sheet Metal Contractors of Milwaukee (local industry fund) | $0.19 |
| SMACNA Industry Fund (IFUS) | 0.12 |
| International Training Inst. | 0.12 |
| Milwaukee Journeymen & Apprenticeship Training Fund | 0.38 |
| Day School Reimbursement (via JATTF) | 0.10 |
| SATAP | 0.02 |
| CLMC/BIG STEP (via JATTF) | 0.08 |
| SMOHIT | 0.02 |
| NEMIC | 0.03 |
| | 1.06 |

## Addendum 2. Overtime and Holiday Work

(a) In all cases where work is required to be done outside of the hours specified in Section 1, Article VI, or on the days specified in Section 2, Article VI, the hours worked shall be compensated as follows:

(1) All overtime hours worked between six (6) a.m. Monday and six (6) p.m. Saturday shall be compensated at time and one half.

(2) All overtime hours worked between six (6) p.m. Saturday and six (6) a.m. Monday and all hours worked on the holidays specified in Section 2 of Article VI, shall be compensated at

31

double time.

(3) Double time will also be paid after working eight (8) hours on any Saturday.

## Addendum 3. On Call Language

1. An employee who is required to be on-call is paid an on-call premium to compensate the employee for having to be available for work, not for doing work. The on-call premium shall not be less than $15.00/day, but the on-call pay is voided if dispatched for a service call, after normal work hours.

2. Payment for actually performing work is governed by Article VI and Addendum 2 of this collective bargaining agreement.

3. Where an employee is on-call, he/she is required to report to work when called by the Employer. Employees may also be required to carry out work duties by telephone and/or electronically.

## Addendum 4. PAL.

PAL Check-off. Employees desiring to contribute two cents ($0.02) per hour worked to the SMART Political Action League (PAL) must sign an authorization. Employers must remit these funds, identified as 'PAL Check-off', that are to be received before the 20th day of the succeeding month.

## Addendum 5. Health and Welfare

(a) The rate per hour for all hours worked by all classifications covered in this agreement shall be paid monthly by the Employer to the Wisconsin Sheet Metal Workers' Health and Benefit Fund.

(b) The Association shall be the exclusive representative of the Employers and shall have equal representation of fifty percent (50%) with the Union in drafting and in the administration of this Health and Benefit Plan.

32

(c) Note: The Parties have a Letter of Understanding regarding the retiree subsidy and the creation of a Health Reimbursement Account.

## Addendum 6.  Pension Plan

(a) See the Addenda to this Agreement for the contribution to the Sheet Metal Workers' National Pension Fund per hour for all hours worked by each sheet metal worker. (The Addenda show the employer contribution and allocations as of June 1st 2018.)

(b) The contribution to the Sheet Metal Workers National Pension Fund shall be on all hours worked for journeymen, apprentices, Industrial Addendum Workers, and warehousemen and with regard to sheet metal labor/trainees, see Article XII, Section 9.

(c) Contributions on behalf of apprentices shall be paid on the following percentages of journeyman pension contribution for each period of apprenticeship.

| | |
|---|---|
| 1st | 47% |
| 2nd | 54% |
| 3rd | 64% |
| 4th | 73% |
| 5th | 83% |

Note: For actual contribution rates refer to direct labor cost data sheets.

(d) Notwithstanding any provision of any trust or of this collective bargaining agreement, Article V of the Declaration of Trust of the National Pension Fund shall not be applicable to Industrial Addendum Workers, Apprentices, and Warehousemen, and contribution rates for those workers, if made, may differ from those of journeymen.

(e) If, during the term of this agreement, including any renewal or extension of this agreement, the parties are provided with one or more schedules under Section 305 of the Employee Retirement Income Security Act of 1974 (ERISA), as amended by the Pension Protection Act of 2006, because of an actuary's certification that the Sheet Metal

33

Workers' National Pension Fund (NPF) is in critical or endangered status for a plan year, the Union may automatically adopt a schedule as described in the next paragraph, without the consent of the Association, because the labor agreement provides for the automatic allocation of the wage and fringe packages.

The parties agree that a schedule described above will be deemed to be adopted automatically if, in accordance with this agreement, the Union allocates or reallocates a portion of the wage and fringe benefit package sufficient to cover fully any increases in the contribution rates to the NPF under that schedule. The Union shall have the sole right to allocate, at any time during the term of this agreement, such amounts from the wage package to increase the contribution rates to the amount required for one of the schedules provided by the NPF.

The parties agree further that the schedule described above will become part of this agreement, and will be incorporated by reference herein, on the date the schedule is adopted or is deemed to have been adopted automatically in accordance with the terms above. The parties will not take any action or actions inconsistent with the NPF's Rehabilitation Plan or Funding Improvement Plan of which the schedule is a part, as modified or amended from time to time.

If the NPF requires any contributions or payments of any kind that are in excess of these amounts, or if additional payments or contributions of any kind are required by law to be paid by the Employer, same will be deducted from the overall negotiated Wage Package including the base wage, if necessary provided that the Employer has remained in strict compliance with any relevant regulations. For example, in the event the employer assessments (e.g. surcharges) or excise taxes are required to be paid to The National Pension Fund (or the IRS in the case of an excise tax) for work performed under this Labor Agreement, the Employer shall be entitled to make an equal offset to the taxable base rate. As an example, if the Employer is required to pay an assessment of 10 cents per hour to the National Pension Fund, the Employer shall deduct an equal amount from the employee's taxable base pay. The Union shall not reduce or eliminate contributions to the National Pension

34

Fund if it could trigger withdrawal liability or excise taxes for the Employer.

**Addendum 7.  Travel and Transportation**

(a) "BASIC ZONE" - DEFINITION.  For the purpose and within the meaning of this Addendum (Travel and Transportation), the basic zone shall be that portion of the geographical area covered by this agreement which includes the counties in the State of Wisconsin of Milwaukee, Ozaukee, Washington, Dodge, Waukesha and Jefferson and that area defined by a line 25 miles beyond the perimeter of the six county area (see attached map). And with regard to each employee the basic zone also includes the area outside those counties that falls within a radius of 25 miles of the center of the municipality appearing on the post office address of the employee. Where such post office address represents an unincorporated area, the center of the radius shall be the post office that serves the resident. The employee's address will not be the basis of hiring or severance decisions by the employer.

(b) When traveling in the basic zone covered by this Labor Agreement, for travel wholly within basic zone there shall be no compensation from home to job, or job to home.  For necessary travel outside of the basic (6) six county zone when traveling beyond 25 miles from your home, from job to job, job to shop or shop to job each employee using his own vehicle in so traveling shall receive the last announced Internal Revenue Service rate per mile.  The joint Labor-Management committee will meet annually and decide the rate for each following calendar year, using the last announced Internal Revenue Service rate.

(c) TRAVEL OUTSIDE BASIC ZONE

(1) For travel to and from a job outside the basic zone, each employee using his own vehicle so traveling shall receive mileage reimbursement at the last announced Internal Revenue Service rate per mile for all mileage running from the nearest point on the boundary of the basic zone where crossed by a public highway leading to the job as measured along such highway from the said point to the job.  The joint labor-management committee will meet annually and decide the rate for

35

each following calendar year, using the last announced Internal Revenue Service rate.

(2) When working outside of the basic zone employees subject to this agreement shall be at the boundary of the basic zone at the regular scheduled starting time and at the boundary of the basic zone at the regular scheduled quitting time unless expressly authorized or ordered by the Employer to arrive later or leave earlier. When traveling, all employees shall be paid the total contractual package while working. If the total of working hours and travel hours is eight (8) hours or less the employee shall be paid the total contractual package. If the total of working hours is eight (8) or more the employee shall be paid the total contractual package for those hours worked and pay for the time spent traveling shall be the base wage including the amount of base wage allocated by the employee to 401(k) contribution.

(3) When employed outside the basic zone and within an area covered by another Labor Agreement with the International Association of Sheet Metal, Air, Rail & Transportation Workers, employees shall provide transportation for themselves which will assure their arrival at the boundary of the basic zone at the regular starting time and shall assure arrival to such point at the regular scheduled quitting time. The employer shall provide for the payment of wages at the total wage package rate for travel to and from the job.

**Addendum 8. Stewards**

(a) Each shop/job site may have stewards selected by the Union. The Steward shall be granted the privilege of investigating alleged violations of rules or grievances which may arise and generally represent the employees' interest. The Steward shall be a qualified workman performing work of his craft and shall exercise no supervisory functions. There shall be no non-working stewards.

(b) The Employer shall be notified of the selection and shall give seventy-two (72) hours notice to the Union before a Steward is laid off. A Steward shall not be removed or discriminated against for performing his duties as outlined in this Agreement.

Disputes arising out of the application of this Addendum are to be settled

36

under the provisions of Article X of the Standard Form of Union Agreement.

**Addendum 9. Fund Payments**

(a) Employers shall make payments to the following funds with a single check and remittance form to National Benefit Funds, P.O. Box 79321, Baltimore, MD 21279-0321: (1) Sheet Metal Workers' National Pension Fund; (2) International Training Institute (iTi) for the Sheet Metal and Air Conditioning Industry; (3) NEMI; and (4) SMOHIT.

(b) Employers shall make payments to the following funds to the designated local depository(s): (1) Wisconsin Sheet Metal Workers Health and Benefit Trust Fund; (2) Milwaukee Sheet Metal Journeymen and Apprenticeship Training Trust Fund (which amounts collected by the JATTF may include Day School Reimbursement, and CLMC/BIG STEP); (3) Sheet Metal and Air Conditioning Contractors' National Industry Fund of the United States (IFUS); (4) Sheet Metal Contractors of Milwaukee; (5) PAL; and (6) Union Dues Check-off (as authorized); and (7) SATAP.

(c) The parties to this Agreement, and all employers covered thereby, agree to be bound by all of the terms of the Trust Agreements governing the establishment, administration and operation of the Trust Funds referred to in paragraphs (a) and (b) above; as amended from time to time, and further, agree to be bound by all of the actions, rules, and regulations heretofore and hereafter adopted by the Trustees in accordance with the Trust Agreements. The parties to this Agreement and all employers covered thereby, hereby accept as trustees, the Trustees appointed under and in accordance with each such trust agreement, and all succeeding trustees as shall have been or will be appointed under and in accordance with each such trust agreement.

(d) The trustees or administrators of the several funds (to which funds payments are required to be made by Employers under this Agreement) may, for the purpose of collecting any payments required to be made to such funds, including damages and costs, and for the purpose of enforcing rules of the Trustees concerning the inspection and audit of payroll records, seek any appropriate legal, equitable and administrative relief. They shall not be required to invoke or resort to any grievance or arbitration procedure which may otherwise be provided

37

for in the Agreement.

(e) The Employer shall pay all Fund Contributions to the designated depository of the respective Trustees or Administrators before the 20th day of the succeeding month. When mailed the payments shall be postmarked no later than the 15th day of the month to ensure timely arrival.

(f) Liquidated Damages - The Trustees are hereby authorized to establish a schedule of liquidated damages to be assessed against, and to be paid by, any employer who fails to make timely payments to the Trustees of the Trust Funds referred to in and in accordance with Section 1.

(g) The Employer's obligation under this Agreement to make payments and contributions to any fund referred to in paragraphs (a) and (b) above for all employees covered by this Agreement applies to all employees regardless of membership or non-membership in the Union.

(h) Retirees coverage subject to modification or termination - Employees who retire may continue to receive from the Wisconsin Sheet Metal Health and Benefit Fund benefits of such type and amount and under such terms and conditions as may be provided and established from time to time by the Trustees of the Fund, upon the payment by such retired employees of the required periodic contributions, established by the Trustees; provided, however, that the Trustees may, in their discretion, change, limit, modify or discontinue any such benefit for retired employees.

(i) An Employer will, as a result of being delinquent in his contributions to the fund or funds, be required to furnish a surety bond from a bonding company licensed to do business in the state of Wisconsin, in an amount equal to an averaged one month's payment, to guarantee the payments required by this Agreement to Wisconsin Sheet Metal Health and Benefit Trust Fund, Sheet Metal Workers' National Pension Fund, and the Milwaukee Joint Apprenticeship and Training Trust Fund. This Bond would be required only when the Employer receives written notice from the Union or one of the trust funds, that the employer is delinquent in his contributions, or liquidated damages and interest to the fund or funds and after a demand for the payment of the

38

delinquency has been returned unsatisfied. The Employer agrees to furnish evidence, satisfactory to the Union, or the fund trustees, that he has secured the bond required by this section within seven (7) days after written notice is received of the unsatisfied delinquency. The Employer further agrees that if it becomes necessary to make a claim on the bond in order to collect the delinquencies, the Employer will increase the amount of the bond to an averaged two (2) month's fringe benefit payment and will also secure a bond in the amount of one (1) month's average payroll to guarantee the payment of wages to the employees covered by this Agreement.

(1) The employees may be removed from the job by the Union to enforce payments to the Pension Fund, the Health and Benefit Trust Fund, and the Milwaukee Joint Apprenticeship and Training Trust Fund.

(2) The Employer shall pay his employees for all money lost due to action taken under subparagraph (i) (1) of this addendum.

### Addendum 10. Coffee Break

A ten (10) minute coffee break will be given during the first four (4) hour period. This break will be taken in the shop or in the immediate work area. This break will be taken at 10:00 a.m. or at other times by mutual agreement. There shall be an additional ten (10) minute afternoon coffee break when a ten (10) or more hour day is scheduled.

### Addendum 11. Hiring and Severance Notice.

(a) The Employer shall notify the Union immediately of any discharge or hiring by telephone or other informal communication.

(b) All Employers shall give the Union two (2) hours notice before any layoff. This prior notice will not be required in emergency situations such as job cancellations or suspensions.

(c) The Employer shall send written notice of layoff, discharge or hiring, on forms supplied by the Union, within two (2) working days to the Union.

39

(d) All employers will furnish each employee who is separated from employment a form that is mutually agreed to by both parties which will indicate the reason for separation. Reasons may include: no work available, not qualified to do work available (state type of work), irresponsibility (absent, tardy, etc.), or discipline. Information shall be available to the Union and the Association.

(e) All employees who quit are required to furnish the employer with a termination/quitting slip, showing the reason for quitting, before quitting.

(f) The Association agrees to work with the Union to try and insure the complete participation of Employers in the filling out and submitting of the hiring and severance forms.

## Addendum 12. Parking

Reimbursement will be made to all employees where job site conditions indicate a problem. Reimbursement will be made only for parking paid, which must be documented by a receipt when available. Determination of conditions will be made prior to each job by a representative of the employees and the employer and will prevail throughout the duration of that job. Where busing is required adequate provisions will be made for full insurance coverage for all participants.

## Addendum 13. Dues Check off

(a) Upon receipt of a signed individual authorization from any employee covered under this Agreement, the Employer shall withhold from such employee's earnings payment for Union dues or other obligations under the terms and conditions specified in the individual's authorization. Deductions shall be made from the first pay of each month of said employee and promptly remitted to the Financial Secretary of the Union together with a list of the names of the employees to whom said monies are to be credited. Should any employee have no earnings due him on the first pay day of any month, deductions shall be made from the next succeeding pay of the employee.

(b) Upon receipt of a signed individual authorization from a sheet

40

metal labor/trainee covered under this Agreement, the Employer shall withhold from such sheet metal labor/trainees' earnings payment for the sheet metal labor/trainee fee under the terms and conditions specified in the sheet metal labor/trainee's authorization. Deductions shall be made from the first pay of each month of said sheet metal labor/trainee and promptly remitted to the Financial Secretary of the Union together with a list of the names of the sheet metal labor/trainees to whom said monies are to be credited. Should any sheet metal labor/trainee have no earnings due them on the first payday of any month, deductions shall be made from the next succeeding pay of the sheet metal labor/trainee.

**Addendum 14. Training**

(a) The local Joint Apprenticeship and Training Committee shall implement and supervise a sheet metal industry training program and encourage employee participation in sponsored training events. Each journeyman shall complete one approved sheet metal industry related educational and/or training course during one semester every three years. Occupational Safety and Health Administration (OSHA) 30-hour Outreach Training Program for the Construction Industry (hereafter "OSHA 30") constitutes one approved sheet metal industry related educational and/or training course for purposes of this subparagraph.

(b) All Building Trades employees must complete OSHA 30 training on their own time and at their own expense. Effective January 1, 2018, an employee who does not complete OSHA 30 training will not receive any scheduled wage increase until such training is completed and then only on a prospective basis. The employer may decline to hire, and shall not be obligated to pay "show-up pay" to any employee referred by the Union, if the employee is not able to show that he or she is in compliance with the continuing education requirements set forth in paragraph (a) of this Addendum 13. This shall not affect any employee's ability to solicit work or any Employer's ability to hire employees who solicit work.

(c) The Milwaukee JATC shall develop a series of progressive examinations and a final examination which will determine that the apprentice is qualified to advance and to become a journeyman. If an

41

apprentice fails a progressive or final exam, he/she will continue training on his/her own time and continue to be paid at the percentage of journeyman pay pertaining to the level of the exam successfully completed.

## Addendum 15. Sheet Metal Warehouseman

(a) **Description.** A sheet metal warehouseman is an additional worker classification. His duties include those odd jobs around the shop which do not usurp the work assignments for sheet metal journeymen and apprentices. His duties also include the driving of a truck for deliveries and pickup. More specifically, the duties include: (1) Repair and maintain contractor's tools and equipment; (2) Painting in the shop; (3) Stockroom work; (4) Shop maintenance; (5) Material Handling; (6) Assembly of blast gates; (7) Driving of a truck for deliveries and pickup; (8) Delivery of tools and fabricated materials from the shop to any location on a job site as directed by the superintendent or foreman or journeyman in charge of the project; (9) Inventory and inventory control; (10) Loading and unloading of trucks at the shop or the job site; (11) Crating and shipping all sheet metal products; (12) Cleaning of bag houses and filter maintenance and replacement as directed by a journeyman in charge of job; and (13) Other tasks which may be agreed upon by the Association and the Union. It is intended that warehousemen shall not do Industrial Addendum Class B or Class C work in an Industrial Addendum shop.

(b) **Employment.** The employment of sheet metal warehousemen is optional for contractors; i.e., contractors are not required to employ any sheet metal warehousemen. The first 20 days of employment shall be a probationary period.

42

(c) **Warehouseman Wage Package**

| Effective Date | 6-1-18 | 6-1-19 | 6-1-20 | 6-1-21 | 6-1-22 |
|---|---|---|---|---|---|
| **First 3 Months of Work** | | | | | |
| Base Wage [+ 401 (k) Contr'n] | 13.36 | | | | |
| National Pension Fund | 5.68 | | | | |
| Wisconsin Health & Benefit Fund | 8.37 | | | | |
| 401(k) Contribution** | ** | ** | ** | ** | ** |
| | | | | | |
| **Total Wage Package** | **27.41** | | | | |
| SMC Local Industry Fund | 0.19 | | | | |
| SMACNA IFUS | 0.00 | | | | |
| International Training Inst. | 0.00 | | | | |
| Milwaukee JATTF | 0.33 | | | | |
| Day School Reimbursement | 0.00 | | | | |
| (via JATTF) | | | | | |
| SATAP | 0.02 | | | | |
| CLMC/BIG STEP | 0.08 | | | | |
| SMOHIT | 0.02 | | | | |
| NEMIC | 0.03 | | | | |
| **Total Industry Funds** | **.79** | | | | |
| **Total Contractual Expense** | **28.20** | **29.23** | **30.28** | **31.37** | **32.50** |

**To be determined by the individual
Note: For actual contribution rates refer to direct labor cost data sheets.

43

| Effective Date | 6-1-18 | 6-1-19 | 6-1-20 | 6-1-21 | 6-1-22 |
|---|---|---|---|---|---|
| **After 3 Months of Work** | | | | | |
| Base Wage [+ 401 (k) Contr'n] | 18.14 | | | | |
| National Pension Fund | 5.68 | | | | |
| Wisconsin Health & Benefit Fund | 8.37 | | | | |
| 401(k) Contribution** | ** | ** | ** | ** | ** |
| **Total Wage Package** | **32.19** | | | | |
| SMC Local Industry Fund | 0.19 | | | | |
| SMACNA IFUS | 0.00 | | | | |
| International Training Inst. | 0.12 | | | | |
| Milwaukee JATTF | 0.33 | | | | |
| Day School Reimbursement | 0.00 | | | | |
| (via JATTF) | | | | | |
| SATAP | 0.02 | | | | |
| CLMC/BIG STEP | 0.08 | | | | |
| SMOHIT | 0.02 | | | | |
| NEMIC | 0.03 | | | | |
| **Total Industry Funds** | **0.79** | | | | |
| Total Contractual Expense | 32.98 | 34.18 | 35.41 | 36.68 | 38.00 |

**\*\*To be determined by the individual**

Note: For actual contribution rates refer to direct labor cost data sheets.

### Addendum 16.  Employees Forty Years of Age and Older

The Employer agrees to hire at least one journeyman sheet metal worker forty years of age or over for every five (5) journeymen and apprentice sheet metal workers employed, if available and qualified.  It is understood that present employees will not be replaced at this time.

44

**Addendum 17.  Necessary Hand Tool List**

Pursuant to Article IX, Section 1 of the Basic Labor Agreement:

(a) COMMERCIAL LIST

| | |
|---|---|
| Tool Box | 8" Adjustable Wrench |
| 25 Ft. Steel Tape- | 12" Adjustable Wrench |
| 50 Ft. Steel Tape | 2 Drift Pins |
| Left Hand Aviation Snips | Baby Bull Snips (#M5 WISS) |
| Right Hand Aviation Snips | Channel Lock Pliers |
| Center Punch | Crimping Pliers |
| Prick Punch | 12" Combination Square |
| 12" Dividers | Dolly Bar |
| 8" Regular Pliers | Marking Pen |
| Clip Board | Pencils |
| Screwdrivers (3 Assort.) | Chalk Line |
| Cold Chisels (1) | 2 Folding Tools (Cleat bender) |
| 40 Oz. Hammer | Mortar Chisel |
| Keyhole Saw Handle | 2 Pr. C-Clamp Vise Grips |
| Protractor | Scratch Awl |
| Level | Pop Rivet Gun |
| Small Pinch Bar | Putty Knife |
| Duct Stretcher (Wheel Type) | Hand Seamer |
| Flashlight | 2 Pr. Vise Grips |
| 16 Oz. Hammer | |

45

## (b) INDUSTRIAL LIST

| | |
|---|---|
| Tool Box | 8" Adjustable Wrench |
| Mortar Chisel- | 12" Adjustable Wrench |
| 10 Ft. Steel Tape | 50 Ft. Steel Tape |
| Left Hand Aviation Snips | Claw Hammer |
| Right Hand Aviation Snips | Channel Lock Pliers |
| Center Punch | 2 Drift Pins |
| Prick Punch | 8" Regular Pliers |
| 12" Dividers | Clip Board |
| Socket or Open End Wrench | Dolly Bar |
|    Set up to 7/8" | Marking Pen |
| Screwdrivers (3 Assort.) | Chalk Line |
| Cold Chisels (3 Assort.) | 2 Folding Tools (Cleat bender) |
| Crimping Pliers | 2 Pr. C-Clamp Vise Grips |
| 12" Combination Square | Scratch Awl |
| Keyhole Saw Handle | Putty Knife |
| Pencils | Pop Rivet Gun |
| Level | 40 Oz. Hammer |
| Small Pinch Bar | 16 Oz. Hammer |
| Duct Stretcher (Wheel Type) | 2 Pr. Vise Grips |
| Flashlight | Hand Seamer |

46

(c) RESIDENTIAL LIST

| | |
|---|---|
| Tool Box | 8" Adjustable Wrench |
| Center Punch– | 12" Adjustable Wrench |
| 10 Ft. Steel Tape | 50 Ft. Steel Tape |
| Left Hand Aviation Snips | Claw Hammer |
| Right Hand Aviation Snips | Channel Lock Pliers |
| 12" Dividers | Prick Punch |
| 8" Regular Pliers | Duct Stretcher (Wheel Type) |
| Screwdrivers (3 Assort.) | Clip Board |
| Cold Chisels (3 Assort.) | Pipe & Duct Holder Set |
| 12" Combination Square | Crimping Pliers |
| Keyhole Saw Handle | Dolly Bar |
| Wood Chisel | Marking Pen |
| Level | Pencils |
| Small Pinch Bar | Chalk Line |
| 2 Folding Tools (Cleat bender) | Nail Driver |
| Flashlight | Mortar Chisel |
| 40 Oz. Hammer | 2 Pr. C-Clamp Vise Grips |
| 16 Oz. Hammer | Scratch Awl |
| 2 Pr. Vise Grips | Pop Rivet Gun |
| Putty Knife | Hand Seamer |

47

**Addendum 18. General and Miscellaneous**

(a) **Time Period for Union to Provide Workers.** When the employer needs additional duly qualified journeymen sheet metal workers, fabricators, and registered apprentices to properly execute work contracted for by the employer in the manner and under the conditions specified in this agreement, the employer shall give the Union forty-eight (48) hours to provide suitable journeymen sheet metal workers, fabricators, and registered apprentices.

(b) **Insurance.** All Employers shall carry unemployment and worker's compensation insurance.

(c) **Work on Picket Lines and Non-AFL-CIO Jobs**

(1) It shall not be a violation of this Agreement for a member of the Union to refuse to work on any job on which there are employees who receive less than the prevailing area scale in wages, benefits and other conditions of employment provided for in current collective bargaining Agreements of Local AFL-CIO Unions representing such employee's trade.

(2) It shall not be a violation of this Agreement and it shall not be a cause for discharge of any employee covered by this Agreement who refuses to go through a lawful primary picket line.

(d) **Lockbox.** All employers shall provide a metal box, with a lock for both the employer's and journeymen's tools and/or equipment at any job site which requires overnight storage of said tools and/or equipment.

(e) **Heated Shelter.** Between November 1 and April 15, the contractor shall provide a heated lunch shelter at all job sites requiring 10 or more sheet metal workers.

(f) **Employer Equipment.** The employer shall maintain a permanent place of business and have the necessary machines, equipment and tools to creditably engage in the business of Sheet Metal Work as defined in Article I, Section 1.

(g) **Safety Policies and Programs.** All Employers shall comply with

48

all applicable rules pertaining to sanitary facilities, healthful environment and safety as required by applicable state and federal law. The Association and the Union shall create a joint committee of qualified representatives (which may be the Local Joint Adjustment Board referred to in Section 2 of Article X of the basic Agreement) for the purpose of discussing matters involving construction site and equipment safety policies, programs and procedures, and for the purpose of consulting with appropriate state and federal governmental agencies in this regard.

(h) **Tool Insurance.** The Sheet Metal Contractors of Milwaukee (local industry fund) will insure all contributors to said fund. Non-contributors will provide independent insurance. Sheet Metal Workers' tools furnished by the journeymen and apprentices will be insured by contractors, either through the local industry fund or independently, under the following conditions:

(1) The maximum loss for each sheet metal worker for each occurrence is the current retail cost of the necessary hand tools as required under Article IX, Section 1, with a $25.00 deductible for each occurrence. The maximum loss for one sheet metal worker for each occurrence is $550.00 with a $25.00 deduction for each occurrence.

(2) There must be signs of forcible entry and a police report must be filed.

(3) The tools shall be insured against theft only, and only if the tools are at the job, in the shop, or locked in a company owned vehicle.

(4) A representative of the Union and a representative of the Association will act as the adjuster.

(5) All tools shall be marked, etched, or stamped with the owner's initials.

(6) The sheet metal worker shall furnish a list of tools to the Industry Fund, and this will be the list of the tools insured.

49

(7) In the event covered tools are stolen, a new tool list must be completed and submitted to the Industry Fund within 60 calendar days of the date the tools were stolen in order to have the new tools insured. In the event a new inventory is not submitted within the 60-day period, receipts for new tools purchased, in lieu of an inventory, may serve during the 60-day period to provide insured coverage.

(8) In the event a sheet metal worker changes employers and has a recognized tool list on file, a new list need not be established unless additional tools have been purchased.

(9) Additional tools may be covered if receipts are submitted for the tools within one (1) year of purchase - subject to the $550.00 limit.

(10) It is recommended that a new list be submitted every two (2) years.

(11) All claims shall be submitted to the Industry Fund on forms provided.

(i) **Discrimination.** The Employer and the Union agree not to discriminate against any individual in hiring or employment because of race, color, religion, sex, national origin, or on the basis of age as provided in the Age Discrimination Employment Act or any other basis prohibited by state or federal law. An alleged violation of this subsection (i) may be pursued under the grievance procedure set forth in Sections 1 and 2 of Article X of the basic Labor Agreement, but shall not be subject to adjudication or arbitration under the remaining sections of Article X. Any individual claiming a violation of this subsection (i) may, in addition, pursue the remedies available under applicable state and federal equal rights or fair employment laws.

50

(j) **Equipment to be furnished welders.** The employer shall, with due regard for personal hygiene, furnish hard hats, regular non-prescription safety glasses, welding gloves, gauntlets, welding hoods, ear plugs, and ear muffs where required to perform the job. Replacements will be made on the basis of worn-out or broken gear only.

(k) **Safety glasses.** If safety glasses are required to be worn, employers shall issue safety glasses with side shields to employees who do not need prescription lenses. Such non-prescription safety glasses shall remain the property of the employer. Employers shall partially reimburse employees needing prescription eyewear when safety glasses are required to be worn in accordance with the following: (1) Employee shall be responsible for and pay for any examination, prescription, and other pertinent data; (2) Safety glasses shall include side shields; (3) Employee may receive not more than one partial reimbursement per calendar year; (4) Purchase receipt must be presented to employer at the time of reimbursement request; and (5) the amount of the reimbursement shall be: $10 for single vision lens glasses; $15 for bifocal, and $18 for trifocals or any other special frames and/or lens.

(l) **Safety Shoes.** When safety shoes are required by the Company, the Company shall pay 50% up to $50.00 towards the cost of the shoes. Employees shall be partially reimbursed for not more than one pair of safety shoes per calendar year. The purchase receipt must be presented to the Employer when reimbursement is requested.

(m) **Moonlighting.** No employee under this agreement shall contract or subcontract for the furnishing and/or installation of the work defined in Section 1, Article I, neither shall any employer, subject to this agreement, furnish or supply such employee with materials, either fabricated or not fabricated, for that purpose.

(n) **Shop Foreman/General Foreman.** A shop foreman or general foreman shall be a member of Local #18.

(o) **Alcohol or Drug Abuse, Testing and Job Security.**
    (1) After an employee, who has turned himself in to an alcohol or drug abuse clinic for treatment, is released from the clinic, he shall be rehired depending upon the availability of work.

    (2) Employees shall abide by the Joint Labor-Management

51

Substance Abuse Policy.  Each employee shall receive a copy of the policy.

(p) **Entry to Job Site.**  The Business Manager and/or Business Representative of the Union shall be permitted reasonable expeditious entry to job sites and shops during working hours, but they shall first obtain permission from the Employer or his representative and they shall in no way interfere with the progress of work.

(q) **Federal and State Wage Determination Forms.**  The Association agrees to work with the Union to try and insure the complete participation of Employers in the prevailing wage survey forms for Federal, State of Wisconsin and Municipal prevailing wage programs. The Association shall distribute the computer disks or other media provided by the Union which will have the appropriate wage and fringe benefit information inserted by the Union.

(r) **Lending Employees.**  Employer will not lend members of Local #18 from his shop to another without notification to the Union.

(s) **Union Label**.  During compliance with all the provisions of this Agreement, the Employer shall display the appropriate union label of the International Association of Sheet Metal, Air, Rail & Transportation Workers on items produced for sale to the unionized segment of the trade exclusively under the terms of this Agreement.   The Employer agrees that all union labels shall remain the property of the Union.

(t) **First Aid and CPR.**  All employees covered by this contract will receive training and certify in First Aid and CPR within the first year of the agreement and will subsequently renew and certify prior to each contract year.  There will be no cost to the employee.

(u) **Driver's License/Driving Record**.  Employees whose duties require him/her to operate an Employer vehicle or traveling for the Employer except to and from work must have a valid Wisconsin driver's license.  Employees must inform the Employer whenever he/she gets 9 points charged against his/her license or a DUI/DWI conviction within three working days of issuance.

(v) **Employee 401K Plan.** The Employer shall timely contribute 401(k) elective deferrals to the Sheet Metal Workers 401(k) Plan pursuant to either employee deferral collections or automatic enrollment

52

rules adopted by the Plan's Trustees. The Employers shall provide the Trustees or their delegates with wage and other information that the Plan reasonably requires to satisfy its testing and reporting requirements.

(w) **National Health Insurance.** In the event a National Health Insurance Plan, State Health Insurance Plan or other government health plan is enacted, the parties agree to split the initial additional cost (if any) on a 50-50 basis. If as a result of state or federal legislation the cost to maintain the health fund is reduced the hourly contribution rate shall be proportionately reduced and the difference added to the base hourly wage rate.

(x) **Fair Day's Work.** It is the intent of both parties to this agreement that the employee will furnish a full fair day's work for a full fair day's pay.

## Addendum 19. Substance Abuse Policy

The parties agree to abide by the Local #18 Joint Labor-Management Substance Abuse Testing and Assistance Program (SATAP).

## Addendum 20. Community Outreach

The Union and the Association desire to address the industry's interest in employing disadvantaged, minority, and female workers in general and COIN/RPP and similar certified individuals in particular. The Union and the Association have experience working with Building Industry Group – Skilled Trades Employment Program (BIG STEP), a community based organization that has provided assistance in preparing individuals for construction employment. The Union and the Association agree to work with organizations such as BIG STEP to facilitate the entry of disadvantaged, minority, and female workers into the Union Sheet Metal Industry.

53

## Addendum 21.  Right to Allocate

The following allocation language applies to all employees in any classification or addendum contained within this Agreement:

The Union reserves the full right and the Association grants the Union the full right to allocate additional amounts at any time to or from the base wage and/or any increases covered by this Agreement to any of the fringes, provided however, that the amount negotiated for future increases shall automatically be adjusted by diverting monies from the Base Wage into the National Pension Fund in an amount sufficient to maintain benefits by fully funding all required increases as announced from time to time by the Trustees of the NPF. Except with regard to apprentices as provided in Article XI, allocations will not be allowed that result in increasing the total contractual expense listed above and/or will not be allowed when they would result in noncompliance with state apprenticeship wage requirements. Prior to allocation by journeymen, the percentages listed in the contract for apprentices shall be followed. Due to allocation, however, the apprentice base wage, as a percentage of the journeyman's base wage rate, for each period of apprenticeship, may not be as listed in the contract. To minimize payroll calculations, allocations shall be effective as of the Sunday closest in time (prior to or after) the effective date of the allocation.

The Union may make additional allocations into any existing fund.

## INDUSTRIAL FABRICATING AND MANUFACTURING
## ADDENDUM TO THE
## BASIC LABOR AGREEMENT

### ARTICLE I - SCOPE

**Section 1.** This Addendum covers the rates of pay and conditions of employment of all employees of the employer engaged in the manufacture, fabrication, assembling, handling, altering and repairing of all ferrous and non-ferrous metals, including other materials used in lieu thereof, as required for installation within the confines of an industrial, processing or manufacturing jobsite and defined in Section 2 of this Article.

**Section 2.** Section 1 of this Article relates to the fabrication only of air pollution control systems, noise abatement materials and all other industrial work, excluding air conditioning, heating and ventilating systems installed in building enclosures to provide human comfort and all architectural sheet metal work.

**Section 3.** In addition to work defined in Section 2 of this Article, fabrication of items or products normally manufactured under production agreements, permitted buy-out items, and/or other items as may be mutually agreed to by the parties, may be included in the scope of this addendum.

**Section 4.** The Employer assures the Union that every effort will be made to obtain all work covered by this addendum and will attempt to secure such work as the turnkey contractor to design, fabricate and install. All work so obtained under this Addendum shall be assigned to members of the International Association of Sheet Metal, Air, Rail & Transportation Workers to fabricate and install, if the Employer has contracted to do such work.

### ARTICLE II - ERECTION/INSTALLATION

The Employer agrees that he will follow the below procedure relative to the installation or erection of all products and or equipment manufactured under this agreement for use in the building and

55

construction industry, and coming within the trade jurisdiction of journeymen members of the International Association of Sheet Metal, Air, Rail & Transportation Workers.

1. Whenever the Employer subcontracts such products and/or equipment, it agrees to subcontract same to a contractor who employs journeymen sheet metal workers for this type of work.

2. Whenever the Employer erects such work, he shall call upon the building and construction trades union affiliated with the International Association of Sheet Metal, Air, Rail & Transportation Workers having jurisdiction over the area in which such work is to be performed to furnish the Employer with men at the prevailing wages and conditions of said local union, but giving due consideration to those classifications of employees accorded the Employer in his home jurisdiction. The signatory parties shall make every possible effort to arrange a mutually satisfactory jobsite hiring arrangement so as to make the signatory contractor as competitive as possible on the erection phase of the work.

3. Whenever the Employer sells such products and/or equipment directly to a general or specialty contractor or an owner, he shall furnish the Union with information on all such shipments on a weekly basis. Such information shall include the type of products or equipment shipped, the date of shipment, name and address of consignee and/or location of delivery site.

## ARTICLE III - RATES AND CLASSIFICATIONS

**Section 1.** Wage rates for Industrial Sheet Metal Workers covered by this Addendum who perform any work specified in Article I of this Addendum shall be a negotiated wage rate commensurate with existing industrial rate in the local geographical area with the exception of journeymen and apprentices on the payroll of the employer on the effective date of this Addendum.

**Class A Building Trades Journeyman**

56

All supervision, pattern layout and development, detailed drawings, blueprint, plan take-off, set-up mechanic and such other work as may be mutually agreed upon by the parties. The Total Wage Package for journeymen shall be in accordance with the basic Labor Agreement.

## Class B Industrial Sheet Metal Workers (Machine Operators, Welders, Setup Men, Crane Operators)

(Crane operators are those workers who operate a crane from a mobile cab or platform.) Work included in this classification: tacking, welding, burning, piping, wiring, fitting, operating of all shop equipment, and such other work as may be mutually agreed upon by the parties. The probationary period for Class B Industrial Sheet Metal Workers shall be 30 working days.

### WAGE PACKAGES

| Effective Date | 6-1-18 | 6-1-19 | 6-1-20 | 6-1-21 | 6-1-22 |
|---|---|---|---|---|---|
| **Class B Probationary** | | | | | |
| Base Wage [+ 401 (k) Contr'n] | 15.54 | | | | |
| National Pension Fund | 7.88 | | | | |
| Wisconsin Health & Benefit Fund | 8.37 | | | | |
| 401(k) Contribution** | ** | ** | ** | ** | ** |
| **Total Wage Package** | **31.79** | | | | |
| SMC Local Industry Fund | 0.12 | | | | |
| SMACNA IFUS | 0.00 | | | | |
| International Training Inst. | 0.12 | | | | |
| Milwaukee JATTF | 0.27 | | | | |
| SATAP | 0.02 | | | | |
| CLMC/BIG STEP | 0.00 | | | | |
| SMOHIT | 0.02 | | | | |
| NEMIC | 0.03 | | | | |
| **Total Industry Funds** | **0.58** | | | | |
| **Total Contractual Expense** | **32.37** | **33.02** | **33.76** | **34.52** | **35.38** |

**To be determined by the individual

57

Note: For actual contribution rates refer to direct labor cost data sheets.

| Effective Date | 6-1-18 | 6-1-19 | 6-1-20 | 6-1-21 | 6-1-22 |
|---|---|---|---|---|---|
| **Class B** | | | | | |
| Base Wage [+ 401 (k) Contr'n] | 25.96 | | | | |
| National Pension Fund | 7.88 | | | | |
| Wisconsin Health & Benefit Fund | 8.37 | | | | |
| 401(k) Contribution** | ** | ** | ** | ** | ** |
| **Total Wage Package** | **42.21** | | | | |
| SMC Local Industry Fund | 0.12 | | | | |
| SMACNA IFUS | 0.00 | | | | |
| International Training Inst. | 0.12 | | | | |
| Milwaukee JATTF | 0.27 | | | | |
| SATAP | 0.02 | | | | |
| CLMC/BIG STEP | 0.00 | | | | |
| SMOHIT | 0.02 | | | | |
| NEMIC | 0.03 | | | | |
| **Total Industry Funds** | **0.58** | | | | |
| **Total Contractual Expense** | 42.79 | 43.65 | 44.63 | 45.63 | 46.77 |

**To be determined by the individual

Note: For actual contribution rates refer to direct labor cost data sheets.

## Class B Industrial Sheet Metal Trainee

When the Union cannot supply qualified Class B Industrial Sheet Metal

58

Workers, Employers may hire trainees.

The Industrial Addendum Trainee Program is a 6,000 hour program leading to qualification as an Industrial Sheet Metal Worker. Trainees shall be rotated through different work assignments within their job classification and they shall attend one Milwaukee JATC approved training evening class per calendar year. An Industrial Trainee who does not complete the required training will not receive any scheduled wage increase until such training is completed and then only on a prospective basis. There shall be a probationary period of 30 days. The trainee shall be selected for layoff by each individual Employer before any Class B Industrial Sheet Metal Workers. Any Class B Industrial Sheet Metal Workers who are laid off because of lack of work, shall be re-hired by the same Employer prior to the hiring of any Class B Industrial Sheet Metal Trainee; providing the layoff occurred within three months of the hiring time.

### INDUSTRIAL ADDENDUM CLASS B TRAINEE

| Hourly Wages & Fringes | 1st<br>0 – 480 hrs | 1st<br>481 – 1000 hrs | 2nd<br>1,000 hrs | 3rd<br>1,000 hrs | 4th<br>1,000 hrs | 5th<br>1,000 hrs | 6th<br>1,000 hrs |
|---|---|---|---|---|---|---|---|
| Wage Package | | | | | | | |
| Base Wage Rate Plus 401(k) | 14.57 | 14.63 | 14.63 | 14.63 | 16.54 | 19.35 | 22.14 |
| National Pension Fund | 0.00 | 0.05 | 7.88 | 7.88 | 7.88 | 7.88 | 7.88 |
| WI S/M Health & Benefit Fund | 8.37 | 8.37 | 8.37 | 8.37 | 8.37 | 8.37 | 8.37 |
| 401(k) Contribution** | ** | ** | ** | ** | ** | ** | ** |
| **Total Wage Package 6-1-18** | **22.94** | **23.05** | **30.88** | **30.88** | **32.79** | **35.60** | **38.39** |
| Industry Funds | | | | | | | |
| SMC Local Industry Fund | 0.12 | 0.12 | 0.12 | 0.12 | 0.12 | 0.12 | 0.12 |
| SMACNA IFUS | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| International Training Inst. | 0.12 | 0.12 | 0.12 | 0.12 | 0.12 | 0.12 | 0.12 |
| Milwaukee JATTF | 0.27 | 0.27 | 0.27 | 0.27 | 0.27 | 0.27 | 0.27 |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| SATAP | 0.02 | 0.02 | 0.02 | 0.02 | 0.02 | 0.02 | 0.02 |
| CLMC/BIG STEP | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| SMOHIT | 0.02 | 0.02 | 0.02 | 0.02 | 0.02 | 0.02 | 0.02 |
| NEMIC | 0.03 | 0.03 | 0.03 | 0.03 | 0.03 | 0.03 | 0.03 |
| Total Industry Funds | 0.58 | 0.58 | 0.58 | 0.58 | 0.58 | 0.58 | 0.58 |
| Total Contractual Cost – 6-1-18 | 23.52 | 23.63 | 31.46 | 31.46 | 33.37 | 36.18 | 38.97 |
| Total Contractual Cost – 6-1-19 | 23.99 | 24.10 | 32.09 | 32.09 | 34.04 | 36.90 | 39.75 |
| Total Contractual Cost – 6-1-20 | 24.53 | 24.64 | 32.82 | 32.82 | 34.81 | 37.73 | 40.64 |
| Total Contractual Cost – 6-1-21 | 25.08 | 25.19 | 33.56 | 33.56 | 35.59 | 38.58 | 41.55 |
| Total Contractual Cost – 6-1-22 | 25.71 | 25.82 | 34.40 | 34.40 | 36.48 | 39.54 | 42.59 |

**\*\* To be determined by the individual**

There shall be no National Pension Fund contribution for the Industrial B trainee during the first 480 hours of employment, a National Pension Fund contribution of $0.05 per hour for 481 hours through 1000 hours and after 1000 hours a National Pension Fund contribution will be paid for all hours worked according to the wage data sheets supplied from time to time by the local union showing the current contribution rates for Industrial B Trainees. The Industrial B Trainee will participate with contributions to the other funds to which are set forth in the wage data sheets from the first hour of employment.

Note: For actual contribution rates refer to direct labor cost data sheets.

## Class C, Painters, Grinders, Polishers, Material Handlers

Work included in this classification: shipping, receiving, material handling, preparation for painting, painting, wire brushing, grinding, housecleaning, delivery of materials to job sites, and other such work as

60

may be mutually agreed upon. There shall be a thirty (30) Working Day Probationary Period for Class C Industrial Sheet Metal Workers.

### WAGE PACKAGES

| Effective Date | 6-1-18 | 6-1-19 | 6-1-20 | 6-1-21 | 6-1-22 |
|---|---|---|---|---|---|
| **Class C** | | | | | |
| Base Wage [+ 401 (k) Contr'n] | 15.88 | | | | |
| National Pension Fund | 7.88 | | | | |
| Wisconsin Health & Benefit Fund | 8.37 | | | | |
| 401(k) Contribution** | ** | ** | ** | ** | ** |
| **Total Wage Package** | **32.13** | | | | |
| SMC Local Industry Fund | 0.12 | | | | |
| SMACNA IFUS | 0.00 | | | | |
| International Training Inst. | 0.12 | | | | |
| Milwaukee JATTF | 0.27 | | | | |
| SATAP | 0.02 | | | | |
| CLMC/BIG STEP | 0.00 | | | | |
| SMOHIT | 0.02 | | | | |
| NEMIC | 0.03 | | | | |
| **Total Industry Funds** | **0.58** | | | | |
| **Total Contractual Expense** | 32.71 | 33.36 | 34.11 | 34.88 | 35.75 |

**To be determined by the individual.

Note: For actual contribution rates refer to direct labor cost data sheets.

### Industrial Fabricators

The Following classification will work only in the shop of the Employer and perform only the work described in this Addendum.

### 1. Industrial Fabricators (Machine Operators, Welders, Setup Men, Crane Operators, Fabricators, Grinders, Material

61

**Handlers, Painters, Polishers).** Work included in this classification includes tacking, welding, burning, piping, wiring, fitting, painting, operating of all shop equipment, shipping, receiving, material handling, preparation for painting, wire brushing, grinding, polishing, housecleaning, delivery of materials to job sites, and other such work as may be mutually agreed upon by the parties.

## WAGE and FRINGE RATES

Wages, including fringe benefits and programs, for Industrial Fabricators shall be as outlined in this Section.

## INDUSTRIAL FABRICATORS:

|  | **6/1/18** |
|---|---|
| Minimum Base Wage Rate | $18.00 |
| Health and Welfare | $ 5.25 |
| National Pension Fund | $ 7.88 |
| SMC Local Industry Fund | $ 0.12 |
| International Training Inst. | $ 0.12 |
| Local Training Fund | $ 0.27 |
| SMOHIT | $ 0.02 |
| NEMI | $ 0.03 |
| Drug Testing | $ 0.02 |
| **TOTAL PACKAGE:** | **$31.71** |

June 1, 2019 – Total Package + 2% increase

June 1, 2020 – Total Package + 2.25% increase

June 1, 2021 – Total Package + 2.25% increase

62

June 1, 2022 – Total Package + 2.5% increase

**(A)** Building Trades Journeymen, Apprentices, and Sheet Metal Labor Trainees, Industrial B & C Sheet Metal Workers on the payroll of the Employer on the effective date of this Agreement, shall be accorded all wages, fringes and other contractual conditions of employment as established in the local basic or Building Trades Standard Form of Union Agreement (SFUA) and as may be amended from time to time, rather than this Section.

**(B)** In the event of a layoff, employees shall be laid off by their ability and qualifications to immediately perform the remaining work competently. Provided further, that it is expressly understood that in all cases Industrial Fabricators shall be laid off prior to any Industrial B or C worker currently on the payroll. Shops must rehire B or C workers they laid off on or after June 1, 2018 before hiring an Industrial Fabricator unless the B or C worker was discharged for cause. A shop can hire Industrial Fabricators before laid off B or C workers provided said shop did not layoff those B or C workers on or after June 1, 2018.

**(C)** **Foreman**: In the absence of a Journeyman Foreman when a crew of four (4) or more Industrial Addendum workers are employed in a shop, one (1) of the Industrial Addendum workers in the crew will be designated a foreman. The wage rate for a foreman shall be 10% of the base rate per hour added to the current Industrial Addendum worker rate.

**Industrial Addendum Sheet Metal Workers Fringe Benefit and Trust Fund Payments**

Employers shall make payments, based on all hours worked, to the above fringe benefit funds and to the following trust funds:

| Trust Fund | Effective June 1, 2018 |
|---|---|
| Apprenticeship & Training | $0.27 |
| Industry Fund of Milwaukee | $0.12 |

63

| | |
|---|---|
| International Training Inst. | $0.12 |
| SATAP | $0.02 |
| CLMC/BIG STEP | $0.00 |
| SMOHIT | $0.02 |
| NEMIC | $0.03 |
| Total per hour worked | $0.58 |

**Section 2.** Payday. Industrial Sheet Metal Workers covered by this Addendum shall be paid weekly in the shop not later than 4:30 p.m. Wednesday or by direct deposit.

**Section 3.** Job Security.

(a) Each Employer signatory to this Addendum shall, on the date the Employer first becomes signatory to the Addendum, submit to the Union and to the Association a list of Class A Journeymen and Apprentices in their employ engaged in work covered in Article I of the Addendum. Such journeymen and apprentices shall receive no reduction in hourly base wage rate from that set forth in the basic Labor Agreement during the term of the Agreement except that a journeyman may choose to permanently work as an Industrial Sheet Metal Worker Class B.

(b) The employees on the list stated in subparagraph (a) above shall not be terminated, except for cause, by implementation of this Addendum. However, journeymen may be laid off for lack of work while other industrial workers are retained, if the only work available is work included in the job descriptions for Class B or C Industrial Sheet Metal Workers.

**Section 4.** Other Industrial Contractors and Targeting.

Should the Union at any time hereafter enter into an agreement with any Industrial contractor operating within the six-county area with terms and conditions more advantageous to such industrial contractor, or should the Union in the case of any industrial contractor which has signed an agreement with the Union allow a course of conduct by such industrial contractor enabling it to operate under more advantageous terms and conditions than is provided for in this agreement, the Employer, party to this Agreement, shall be privileged to adopt such advantageous terms and conditions provided the Employer has sent written notice to the Union calling the matter to its attention. The Union will give notice to the Association prior to agreeing to such conditions.

64

Where the Union targets individual jobs, the targeted jobs' conditions would not become a permanent condition of the contract provided the Association is notified in advance of such targeting and provided that such terms are offered to all Association employers for such jobs.

## ARTICLE IV - BASIC LABOR AGREEMENT

**Section 1.** The provisions of the basic Labor Agreement apply except as specifically altered or amended by this Addendum.

**Section 2.** It is understood and agreed that the Industrial Addendum may be modified by the mutual agreement of the parties in such manner that it may become a separate agreement.

**Section 3. Right to Allocate.** The Union reserves and the Association grants the Union the full right to allocate as described at Addendum 20 to the basic Labor Agreement.

## ARTICLE V

This Addendum, effective as of the 1st day of June 2018, shall remain in full force and effect until the 31st day of May 2023, as stated in Article XIII of the Basic Labor Agreement.

65

In witness whereof, the parties hereto affix their signatures and seal this

_____1ct_____ day of _____June_____, 2018.

SHEET METAL AND AIR CONDITIONING CONTRACTORS'
ASSOCIATION OF MILWAUKEE, INC.

By Lauri A. Rollings

_Lauri A. Rollings_
Executive Vice President

LOCAL UNION NO. 18 OF
THE INTERNATIONAL ASSOCIATION
OF SHEET METAL, AIR, RAIL & TRANSPORTATION WORKERS

By Michael Mooney

_Michael Mooney_
Business Manager

66

## RESIDENTIAL ADDENDUM
## TO THE
## BASIC LABOR AGREEMENT

**Section 1.** Scope. This Addendum covers the rates of pay, rules and working conditions of all employees of the employer engaged in the fabrication, erection, installation, repairing, replacing, and servicing of all residential heating and air conditioning systems and the architectural sheet metal work on such structures. When a project is a combination of residential and commercial work, such architectural sheet metal work shall be classified as residential only with the approval of the Union. Prior approval of the Union is required on all work where a mixture of Residential and Commercial occur before bidding such project.

**Section 2.** Definitions.

(a) RESIDENTIAL. Residential is defined as applying to work on single family dwellings, multiple family housing units, apartments, and condominium homes, with no structures being more than three stories of living space in height and with each individual family unit individually conditioned by a separate and independent unit or system. The three story limit may be waived upon a plan review by Union Representatives and their written acknowledgement of this waiver.

**Section 3.** Employees.

(a) The employer agrees that none but residential journeymen, apprentice sheet metal workers, and sheet metal labor/trainee sheet metal workers shall be employed on any work described in this Addendum except that other building trades members may be voluntarily employed and paid residential wage rates while performing such work.

**Section 4.** Wage Rates.

(a) The regular basic hourly wage rate for residential journeymen sheet metal workers covered by this Addendum shall be as set forth in the following table. Apprentices covered by this Addendum shall be paid on a percentage basis as outlined in Article XI, Section 5 of the Basic Labor Agreement. However, such percentage shall be based on the basic hourly wage rate for residential journeymen covered by this Addendum.

67

| Effective Date | 6-1-18 | 6-1-19 | 6-1-20 | 6-1-21 | 6-1-22 |
|---|---|---|---|---|---|
| **Residential Journeyman** | | | | | |
| Base Wage [+ 401 (k) Contr'n] | 28.97 | | | | |
| National Pension Fund | 14.58 | | | | |
| Wisconsin Health & Benefit Fund | 8.37 | | | | |
| 401 (k) Contribution** | ** | ** | ** | ** | ** |
| | | | | | |
| **Total Wage Package** | **51.92** | | | | |
| SMC Local Industry Fund | 0.19 | | | | |
| SMACNA IFUS | 0.12 | | | | |
| International Training Inst | 0.12 | | | | |
| Milwaukee JATTF | 0.38 | | | | |
| Day School Reimbursement | 0.10 | | | | |
| (via JATTF) | | | | | |
| SATAP | 0.02 | | | | |
| (via JATTF) | | | | | |
| CLMC/BIG STEP | 0.08 | | | | |
| (via JATTF) | | | | | |
| SMOHIT | 0.02 | | | | |
| NEMIC | 0.03 | | | | |
| **Total Industry Funds** | **1.06** | | | | |

| Total Contractual Expense | 52.98 | 54.57 | 56.20 | 57.89 | 59.65 |
|---|---|---|---|---|---|

**To be determined by the individual

Note: For actual contribution rates refer to direct labor cost data sheets.

**Foreman:** When a crew of four (4) or more sheet metal workers is employed on a job site, one (1) of the journeymen in the crew shall be

68

designated a foreman. The wage rate for a foreman shall be 10% of the base wage rate per hour added to the journeyman rate specified above.

(b) Residential Apprentices: See the Direct Labor Cost Data sheets for the wage, fringe benefit and industry fund contributions for residential apprentices.

(c) The Total Wage Packages for Residential Apprentices will increase during the course of this labor agreement in relation to the Residential Journeyman increase, with the allocation to be determined.

(d) The Employer agrees that building trades members so employed under this Addendum shall not forfeit or suffer any reduction in any fringe benefits as outlined in the basic Labor Agreement.

**Section 5.** Basic Labor Agreement.

The employer agrees to be bound by the wages, hours and working conditions contained in the basic Labor Agreement on any work performed on commercial or industrial establishments, or on any work not specified in Sections 1, 2, 3, or 4 of this Addendum. It is expressly agreed and understood that on any specific conditions not enumerated in this Addendum, the basic Labor Agreement shall apply.

It is understood and agreed that the Residential Addendum may be modified by the mutual agreement of the parties in such manner that it may become a separate agreement.

**Section 6.** Temporary Transfer.

All members or apprentices employed under the terms and conditions of this Addendum shall, before starting work under the Addendum sign a form provided at the Union office by the Union, signed by the Union, the Employer and the member temporarily transferring to the Residential Addendum rate.

**Section 7.** Stewards.

All employers who employ members working under this Residential Addendum will have a Steward who will be appointed by the Business

69

Representative, or selected by the employees of the individual shop (other than a supervisory employee.)

**Section 8.** Other Residential Contractors and Targeting.

Should the Union at any time hereafter enter into an agreement with any residential contractor operating within the six county area with terms and conditions more advantageous to such residential contractor, or should the Union in the case of any residential contractor which has signed an agreement with the Union allow a course of conduct by such residential contractor enabling it to operate under more advantageous terms and conditions than is provided for in this agreement, the Employer, party to this Agreement, shall be privileged to adopt such advantageous terms and conditions provided the Employer has sent written notice to the Union calling the matter to its attention. The Union will give notice to the Association prior to agreeing to such conditions.

Where the Union targets individual jobs, the targeted jobs' conditions would not become a permanent condition of the contract, provided the Association is notified in advance of such targeting and provided that such terms are offered to all Association employers for such jobs.

**Section 9.** Right to Allocate.

The Union reserves and the Association grants the Union the full right to allocate as described at Addendum 20 to the basic Labor Agreement.

70

**Section 10.** Signatures.

This Addendum, effective as of the 1st day of June 2018, shall remain in full force and effect until the 31st day of May 2023, as stated in Article XIII of the basic Labor Agreement.

In witness whereof, the parties hereto affix their signatures and seal this

_____1st_____ day of _____June_____, 2018.

SHEET METAL AND AIR CONDITIONING CONTRACTORS' ASSOCIATION OF MILWAUKEE, INC.

By Lauri A. Rollings

_____

Executive Vice President

LOCAL UNION NO. 18 OF
THE INTERNATIONAL ASSOCIATION
OF SHEET METAL, AIR, RAIL & TRANSPORTATION WORKERS

By Michael Mooney

_____

Business Manager

71



INTERNATIONAL ASSOCIATION of
SHEET METAL, AIR, RAIL AND TRANSPORTATION
WORKERS
LOCAL #18 – WISCONSIN
AFL-CIO
2201 Springdale Road
Waukesha, WI 53186

PHONE: 262-798-1818 ● TOLL FREE: 800-242-5822 ● FAX: 262-798-1212



SHEET METAL AND AIR
CONDITIONING CONTRACTORS'
ASSOCIATION OF MILWAUKEE,
INC.
11001 W. Plank Court, Suite 100
Wauwatosa, WI  53226

PHONE:  414-543-7622 ● FAX: 414-543-7626

## MEMORANDUM OF UNDERSTANDING ("MOU") REGARDING HIGH SCHOOL STUDENT CO-OP WORKERS BETWEEN THE SHEET METAL AND AIR CONDITIONING CONTRACTORS' ASSOCIATION OF MILWAUKEE, INC. ("ASSOCIATION") AND LOCAL UNION NO. 18 OF THE INTERNATIONAL ASSOCIATION OF SHEET METAL, AIR, RAIL AND TRANSPORTATION WORKERS ("UNION")

Whereas, the Sheet Metal and Air Conditioning Contractors' Association of Milwaukee, Inc. ("SMACCA" or "Association") and the Local Union No. 18 of the International Association of Sheet Metal, Air, Rail & Transportation Workers ("Local 18" or "the Union") wish to permit contractors who are subject to the Labor Agreement between the Association and Local 18 ("the Labor Agreement") to be able to hire High School Co-op Workers, also known as Youth Apprentices, ("Co-op Workers");

Whereas, Local 18 and SMACCA, ("the Parties") wish for Co-op Workers to be employed while they are in high school under the terms of this MOU;

Whereas SMACCA and Local 18 agree that Co-op Workers are covered by the Labor Agreement during their Co-op Worker employment, but shall only receive the benefits and items listed below in this MOU;

Whereas SMACCA and Local 18 agree that Co-op Workers shall not be part of the pension benefit coverage, health insurance coverage, 401(k) plan, or other employee benefits and terms except as expressly stated below;

72

Whereas SMACCA and Local 18 agree that contractors shall not be required to pay pension, health fund, 401(k), or any other contributions on behalf of Co-op Workers except as expressly stated below;

**Now therefore, the Parties agree as follows:**

1. Co-op Workers may be employed by contractors for employment, but only while a high school student. Upon their scheduled date of graduation, individuals shall no longer be covered by this MOU and only work under the supervision of anyone other than a Pre-Apprentice.

2. Each company that employs an apprentice will be allowed to hire Co-Op Workers per the journeyperson, apprentice, and pre-apprentice (SMLT) contractual ratios contained in the Labor Agreement. Co-op Workers will count in the pre-apprentice ratios.

3. Co-op Workers shall not participate in the pension, health, and 401(k) plans that are administered by the trustees of the Sheet Metal Workers' National Pension Fund (the "Pension Fund"), the Wisconsin Sheet Metal Workers' Health and Benefit Trust Fund ("Health Fund"), the Milwaukee Sheet Metal Journeymen and Apprenticeship Training Trust Fund (the "Education Fund,"), the Apprentice Paid Related Instruction Compensation Reimbursement Program ("Day School Reimbursement Program"), the Sheet Metal Contractors of Milwaukee (the "Local Industry Fund"), the Sheet Metal Workers 401(k) Plan ("401(k) Plan") (collectively the "Benefit Funds"). Accordingly, no contribution payments shall be made for Co-op Workers under any benefit fund administered by the Benefit Funds.

4. Co-op Workers shall not be covered by any of the terms, conditions, or pay provided under the Labor Agreement, including but not limited to pay, overtime, industry, apprenticeship, and training funds payments, working hours, schedules.

5. Co-op Workers shall take and pass a pre-employment drug screening that will be paid for by the entity that is currently paying for the drug testing program per the Labor Agreement.

6. This MOU takes effect June 1, 2018 and remains in effect until May 31, 2023. It may be renewed by written mutual agreement of the signatory parties.

73

LOCAL UNION NO. 18 OF
THE INTERNATIONAL ASSOCIATION
OF SHEET METAL, AIR, RAIL & TRANSPORTATION WORKERS

By Michael Mooney

President and Business Manager


SHEET METAL AND AIR CONDITIONING CONTRACTORS'
ASSOCIATION OF MILWAUKEE, INC.

By Lauri A. Rollings

Executive Vice President

74



